W. B. WORTHEN CO., TRUSTEE, ET AL. *v.* KAVA-
NAUGH, TRUSTEE.

No. 556.   Argued March 7, 1935.—Decided April 1, 1935.

*Mr. A. W. Dobyns,* with whom *Messrs. George B. Rose, J. F. Loughborough,* and *A. F. House* were on the brief, for appellants.

No appearance for appellee.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Municipal Improvement Districts organized under the laws of Arkansas are empowered to issue bonds and to mortgage benefit assessments as security therefor. Street Improvement District, No. 513, of Little Rock, Arkansas, acted under the power thus conferred. On July 1, 1930, it issued bonds, payable to bearer, in the amount of $31,000, and made a mortgage to a firm of bankers as trustee for the bondholders. Accompanying the mortgage was a copy of the assessment of benefits stating in detail the amount of benefits assessed against each piece of property within the improvement district. Some of the bonds were in default on January 1, 1934, for non-payment of principal and interest. This suit was brought by the trustee and also by representative bondholders to foreclose the assessments upon the lots of delinquent owners and for other relief. The right to maintain the suit is undisputed. The controversy hinges upon the terms of the decree.

At the execution of the bonds and mortgages the statutes of Arkansas contained provisions well planned to make these benefit assessments an acceptable security. Under the statutes then in force, lot owners had thirty days for payment of assessments, the time to run from the date of a notice required to be published by the collector. Crawford & Moses' Digest, § 5671. If payment was not made within that time, the collector was

to add a penalty of twenty per cent, and make immediate return of delinquents to the Board of Commissioners. § 5673. The duty was then imposed upon the Commissioners to bring foreclosure suits at once. § 5674. In case of personal service, the defendant was to be required to appear and respond within five days after service. § 5678. The decree when granted was to add to the assessment the twenty per cent penalty, costs, and attorneys' fees. § 5678. In case of constructive service, publication was to be completed within fifteen days, the cause was to be made ready for hearing within fifteen days thereafter, and a decree was to be rendered as in case of actual service. § 5679. If the sum adjudged was not paid within ten days, the property was to be sold upon twenty days notice. § 5684. The property owner was given time to redeem upon payment of the purchase price, with interest at ten per cent if the land had a rental value, and if it had none, then with interest at twenty per cent. § 5644. The time for redemption was either two years or five, there being uncertainty in that respect as to the meaning of the statute. In any event, the purchaser was to be let into possession at once upon the approval of the sale, and was not to be accountable for rents upon redemption. § 5642. If there was an appeal from the decree, the Supreme Court was to advance the cause upon its docket, and give a hearing and decision at as early a date as practicable. § 5686. The transcript was to be filed in the office of the clerk within twenty days after the rendering of the decree appealed from (§ 5687), and no appeal was to be prosecuted if that condition was not fulfilled. § 5689.

In March, 1933, the legislature of Arkansas passed three acts (Nos. 278, 252, and 129), which made over the whole plan to enforce the payment of assessments. Under Act 278, the time for payment after notice was enlarged from thirty days to ninety; the penalty was

reduced from twenty per cent to three per cent; the return of the delinquent list, which till then had to be made forthwith, was to be withheld for another ninety days; the time to appear and answer after personal service, which had formerly been five days, was changed to six months; if service was constructive, there was to be publication for six months (instead of fifteen days), and another six months was to elapse before the cause was to be heard. The decree when rendered was to give still another twelve months for payment (instead of ten days as theretofore) and an additional six months after the new default before the property could be sold. There were to be no costs or attorneys' fees, and only a three per cent penalty. There was also a repeal of the provisions for the expediting of appeals. Under Act 252, the time for redemption was fixed at four years from the sale, and the rate of interest (formerly 10% or 20%) was reduced to 6%, the statute reciting that the law previously in force did not provide an adequate period of redemption from land sales for delinquent taxes in municipal improvement districts. Finally, under Act 129, there was a repeal of § 5642, under which a purchaser had been given the right to go into possession during the term allowed for redemption and to hold such possession without accountability for rents. Coupled with the repeal was the declaration of an emergency, which was stated to endanger the peace, health and safety of a multitude of citizens.

Upon the hearing of the foreclosure suit the trustee and the bondholders contested the validity of these statutory changes, and demanded a decree in accordance with the law theretofore in force. The changes were attacked as an unconstitutional impairment of the obligation of contract (United States Constitution, Art. 1, § 10), as well as upon other grounds. The validity of the new acts was upheld by the Chancery Court, and thereafter on appeal by the Supreme Court of the state. 189 Ark. 723; 75

S. W. (2d) 62.   Cf. *Sewer Improvement District, No. 1,* v. *Delinquent Lands,* 188 Ark. 738; 68 S. W. (2d) 80. Three judges dissented.   The case is here upon appeal. Judicial Code, § 237; 28 U. S. C. § 344.

To know the obligation of a contract we look to the laws in force at its making.   *Sturges* v. *Crowninshield,* 4 Wheat. 122, 197; *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 429.   In the books there is much talk about distinctions between changes of the substance of the contract and changes of the remedy.   *Von Hoffman* v. *Quincy,* 4 Wall. 535; *Louisiana* v. *New Orleans,* 102 U. S. 203; *Barnitz* v. *Beverly,* 163 U. S. 118; cf. *Home Building & Loan Assn.* v. *Blaisdell, supra,* at pp. 429, 434, where the cases are assembled.   The dividing line is at times obscure.   There is no need for the purposes of this case to plot it on the legal map.   Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression.   Even when the public welfare is invoked as an excuse, these bounds must be respected.   *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426, 433, distinguishing *Home Building & Loan Assn.* v. *Blaisdell, supra.*   We state the outermost limits only.   In stating them we do not exclude the possibility that the bounds are even narrower.   The case does not call for definition more precise.   A catalogue of the changes imposed upon this mortgage must lead to the conviction that the framers of the amendments have put restraint aside.   With studied indifference to the interests of the mortgagee or to his appropriate protection they have taken from the mortgage the quality of an acceptable investment for a rational investor.

Under the statutes in force at the making of the contract, the property owner was spurred by every motive of self-interest to pay his assessments if he could, and to pay them without delay.   Under the present statutes he

has every incentive to refuse to pay a dollar, either for interest or for principal. The interval between default in payment and a sale in the foreclosure suit was approximately sixty-five days under the practice formerly prevailing, unless there was service by publication or unless a defense was interposed, in which events the time would be a little longer. The interval between default and sale under the amendatory acts is at least two and a half years, and may be a good deal more. The earlier statutes imposed a penalty of twenty per cent as well as costs and attorneys' fees. The later ones drop the provision for costs and attorneys' fees, and reduce the penalty to three per cent. The changes do not end, however, with the rendition of the judgment and the sale thereunder. Under the earlier law the purchaser, who was likely to be the plaintiff mortgagee, could go into possession upon the confirmation of the sale, and keep the rents and profits during the years allowable for redemption. Today this privilege is withdrawn, and for another four years the possession of the delinquent owner is unaffected by the sale. A minimum of six and a half years is thus the total period during which the holder of the mortgage is without an effective remedy. There is no enforcible obligation in the interval to pay instalments of the principal or even the accruing coupons. The case is not one in which the Chancellor has intervened, either with or without the permission of a statute, to halt the oppressive enforcement of a mortgage by putting off the day of sale or entry for a reasonable time upon compliance by the debtor with reasonable conditions. Relief is not conditioned upon payment of interest and taxes or the rental value of the premises. The case is one of postponement for a term of many years with undisturbed possession for the debtor and without a dollar for the creditor. There is not even a requirement that the debtor shall satisfy the court of his inability to pay.

Whether one or more of the changes effected by these statutes would be reasonable and valid if separated from the others, there is no occasion to consider. A state is free to regulate the procedure in its courts even with reference to contracts already made (*Bronson* v. *Kinzie,* 1 How. 311), and moderate extensions of the time for pleading or for trial will ordinarily fall within the power so reserved. A different situation is presented when extensions are so piled up as to make the remedy a shadow. *Penniman's Case,* 103 U. S. 714, 720; *Oshkosh Waterworks Co.* v. *Oshkosh,* 187 U. S. 437; *Henley* v. *Myers,* 215 U. S. 373, 385; *National Surety Co.* v. *Architectural Decorating Co.,* 226 U. S. 276. What controls our judgment at such times is the underlying reality rather than the form or label. The changes of remedy now challenged as invalid are to be viewed in combination, with the cumulative significance that each imparts to all. So viewed they are seen to be an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security.

The point is made in the opinion of the court below that the amendment denying to a purchaser the privilege of possession during the period for redemption does not modify the power of the Chancellor to appoint a receiver of the rents during the pendency of a suit if the value of the property is so low as to make the security precarious. This is small comfort for an investor who has put his money into a mortgage in the expectation of receiving a return on his investment. If the value of the property is less than the assessment, a receiver will hold the rents to apply upon the judgment in the event of a deficiency, and will not presently disburse them except for necessary expenses. *Booth* v. *Clark,* 17 How. 322, 331; *Davis* v. *Gray,* 16 Wall. 203, 218; *Grant* v. *Phoenix Insurance Co.,* 106 U. S. 429, 431; *Freedman's Saving &*

*Trust Co.* v. *Shepherd,* 127 U. S. 494; *Union Bank of Chicago* v. *Kansas City Bank,* 136 U. S. 223, 236; *Porter* v. *Sabin,* 149 U. S. 473, 479. If the value of the property is greater than the assessment, the delinquent owner will keep the rents, for there will then be no receiver; and the mortgagee must wait until the period for redemption has expired. Active bidding at the sale is made virtually impossible. The buyer, almost of necessity, will be the mortgagee himself, who may offset the price against the debt. Strangers will not bid when four years must go by before they can be let into possession and have a return on what they pay.

Upholders of the challenged acts appeal to the authority of *Home Building & Loan Assn.* v. *Blaisdell, supra,* the case of the Minnesota moratorium. There for a maximum term of two years, but in no event beyond the then existing emergency, a court was empowered, if there was a proper showing of necessity, to stay the foreclosure of a mortgage, but only upon prescribed conditions. " The mortgagor during the extended period is not ousted from possession but he must pay the rental value of the premises as ascertained in judicial proceedings and this amount is applied to the carrying of the property and to. interest upon the indebtedness." 290 U. S. at p. 445. None of these restrictions, nor anything approaching them, is present in this case. There has been not even an attempt to assimilate what was done by this decree to the discretionary action of a Chancellor in subjecting an equitable remedy to an equitable condition. Not Blaisdell's case, but Worthen's *(W. B. Worthen Co.* v. *Thomas, supra),* supplies the applicable rule.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*