## In re SHERMAN et al.

District Court, W. D. Virginia, at Harrisonburg.

Nov. 8, 1935.

B. P. Harrison, James P. Reardon, and Herbert S. Larrick, all of Winchester, Va., for various creditors.

Kuykendall & Benham, of Winchester, Va., for debtors.

PAUL, District Judge.

The above-named debtors filed in this court their petitions under section 75 of the Bankruptcy Act, as amended by the Act of June 28, 1934, 48 Stat. 1289 (known as the Frazier-Lemke Amendment). Having failed to reach agreements with their creditors for any composition or extension of their indebtedness, they filed their amended petitions invoking the remedies of subsection (s) of section 75, and proceedings thereon were pending at the time of the decision of the Supreme Court of the United States in the case of Louisville Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 865, 79 L. Ed. 1593, 97 A. L. R. 1106.

Thereafter, section 75 of the Bankruptcy Act was amended, on August 28, 1935, modifying and re-enacting subsection (s) thereof (11 USCA § 203 (s), and the debtors have sought to have their proceedings continued under the amended subsection (s), which will be referred to as the new Frazier-Lemke Act.

. Certain secured creditors have filed in writing their objections to the granting of the relief provided in the new Frazier-Lemke Act and have moved that the proceedings be dismissed or that the debtors, having been adjudged bankrupt, their estates be administered under the terms of the general Bankruptcy Act. The motion is based upon the alleged unconstitutionality of the new Frazier-Lemke Act, and raises specifically the question of whether the amendments of August 28, 1935, have overcome the objectionable features of the original subsection (s), which caused the Supreme Court to hold that it was unconstitutional. The debts of all the secured creditors were incurred and the instruments securing the same were executed prior to the enactment of the original Frazier-Lemke Act.

There need not be discussed at length the language or the effect of the opinion of the Supreme Court in Louisville Bank v. Radford. The case is well known to the profession. One contention there made was that the provisions of the original Frazier-Lemke amendment transcended the power which Congress possessed to "establish * * * uniform Laws on the subject of Bankruptcies" (Const. art. 1, § 8, cl. 4) ; or, in other words, that the provisions of subsection (s) could not be justified as bankruptcy legislation in any fair or reasonable interpretation of that term. The opinion points out wherein the Frazier-Lemke amendment, in its impairment of the recognized rights of lienors, went far beyond anything theretofore provided by any bankruptcy act. But it also pointed out that the provisions of bankruptcy laws have been progressively broadened from time to time, and that the scope of the power conferred upon Congress to enact bankruptcy

laws is not necessarily limited to that heretofore exercised.

The court found, however, that it had no occasion to decide whether the bankruptcy clause of the Constitution conferred generally the power upon Congress to abridge a lienor's rights in specific property. Instead, it called attention to the fact that the bankruptcy power of Congress is subject to the Fifth Amendment, that the Frazier-Lemke Act, by its terms, applied only to debts existing at the time of its enactment, and held that because it was retroactive and took away rights of the mortgagee in specific property it was in contravention of the Fifth Amendment and, therefore, invalid. In the course of the opinion, there are enumerated certain specific property rights recognized by the law of Kentucky (where the case arose) which would have been taken from the creditor by the application of the act. I do not understand that the opinion purports to name all of the property rights affected or to say that those enumerated are the only ones affected. Presumably, it named those to which its attention was most forcibly drawn.

The new subsection (s), 11 USCA § 203 (s) was, of course, drawn with a view to curing the invalidity of the previous act in the respects pointed out in the Radford Case. It remains to be seen whether it succeeded in doing so.

■ First of all it should be noted that the provision making the former act applicable only to pre-existing debts has been eliminated and presumably the new act is intended to apply whether the debt was contracted before or after enactment of the statute. But this does not in itself overcome the objections to the retroactive effect of the previous act. As I understand it, the disapproval of the Supreme Court was not grounded on the failure of the act to apply equally to all debts whether incurred after passage of the act or before. The objection was that it applied at all to pre-existing debts. So far as this feature of the law is concerned, the objections to the act have not been remedied by extending its applicability to debts incurred after its passage. It is still retroactive as to pre-existing debts, and the objections growing out of this fact will still arise if the act continues to take away specific property rights as the original act was held to do.

■ It is well known that the new subsection (s) has amended many of the provisions of the old act, intending thereby to free the statute of the vices which previously condemned it. Without attempting to discuss the text of the amended act as compared with the original, it is sufficient to say that it was probably intended by Congress that the new act should protect to the creditor all of these property rights which the Supreme Court had enumerated as being taken away by the old act.

The opinion in Louisville Bank v. Radford names the following property rights of which the lienor was deprived by the original Frazier-Lemke Act:

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

"(2) The right to realize upon the security by a judicial public sale.

"(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

"(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

The court was there dealing with property rights recognized under the laws of Kentucky. We must, therefore, inquire whether the same rights exist under the laws of Virginia and whether any of them are taken away by the provisions of the Frazier-Lemke Act, as amended, and inquire also whether, under the laws of Virginia, a lien creditor has any other or different property rights, and, if so, whether they are impaired.

The debts in this case are secured by deeds of trust, the form of instrument in common use in Virginia whereby real estate is pledged as security for debts. The rights of the creditor thereunder are not substantially different from those under a common-law mortgage which is now rarely used in this state, and it is generally customary to use the terms "mortgagor" and "mortgagee" when referring respectively to the debtor and the creditor under a deed of trust. A deed of trust in its legal operation and effect is essentially a mort-

gage with power of sale; the only difference being that the property is conveyed, not to the creditor himself, but to a third person through whom the rights of the creditor are exercised in case of the debtor's default. The rights of the parties are governed by the Virginia statute relating to deeds of trust which, in some respects, imposes more severe obligations upon the debtor and greater rights in the creditor than obtain under the law relating to common-law mortgages.

Section 5167 of the Code of Virginia sets forth in detail the obligations, rights, and duties imposed by a deed of trust. The statute is too long to be quoted in full and most of it is not material here, but the following extracts therefrom may be noted:

"Every deed of trust to secure debts or indemnify sureties, except so far as may be therein otherwise provided, shall be construed to impose and confer upon the parties thereto, and the beneficiaries thereunder, the following duties, rights and obligations in like manner as if the same were expressly provided for by such deed of trust, namely:

"(1) The deed shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation.

"(2) The grantor shall be deemed to covenant that he will pay all taxes, levies, assessments and charges upon the property * * * so long as any obligation upon the grantor under the deed of trust remains undischarged. * * *

"(4) The grantor shall be deemed to covenant that no waste shall be committed or suffered upon the property. * * *

"(6) In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach on any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable, shall take possession of the property and proceed to sell the same at auction at the premises (or at such other place as the trustee may select) upon such terms and conditions as the trustee may deem best, after first advertising," etc.

Under the Virginia law no proceedings in court are necessary to enforce a deed of trust. The secured creditor merely notifies the trustee that the debtor is in default and the trustee proceeds to sell the property; and, as noted from the statute above quoted, the time and place of sale and the terms and conditions thereof are with the discretion of the trustee; certainly within a reasonable discretion. There is no right of redemption in the debtor after sale. The sale by the trustee is absolute and final.

All of the five enumerated property rights which the Supreme Court held to be taken away by the old Frazier-Lemke Act are rights recognizable under the law of Virginia in even more complete and positive form than under the Kentucky law considered in the Radford Case.

We may assume that the provision of the new Frazier-Lemke Act compelling an ultimate public sale of the property upon request of any secured creditor protects certain of the rights which were taken away by the old act; namely, the first, second, and fourth of the rights set out in the opinion in the Radford Case. But even if this be true, it seems clear that the amended act, equally with the original, threatens those rights which the Supreme Court enumerated as 3 and 5. These are in substance the right to determine when a sale shall be held and the right to control the property during default, pending the sale. In the Radford Case it was said that the creditor possessed these rights under the Kentucky law, subject only to the discretion of the court. In Virginia, the same rights exist in more absolute form, for their exercise is not subject to the discretion of any court, unless, it may be, they were exercised in such an oppressive or wasteful manner as to constitute a fraud upon the rights of the debtor and thereby call for restraint by the court in an independent suit instituted for that purpose.

It will be noticed that in Virginia the trustee takes possession of the property following default, and thereafter sells the property at such time and place and upon such terms and conditions as he sees fit. It seems clear that the right to determine when a sale shall be held and the right to control the property pending a sale are abrogated by the Frazier-Lemke Act, even since its amendment. That act specifically provides that possession of the property shall remain in the debtor, and that all proceedings shall be stayed for a period of three years. That these provisions are subject to compliance with conditions im-

posed by the court does not lessen the fact that they take away rights previously vested in the creditor.

The most that can be said is that the amended act preserves the right to retain the lien until the debt is paid, and to that end provides for a public sale at which the creditor himself may bid, and by bidding may, if necessity arises, take over the property itself. But the right to compel such a sale is delayed for a period of three years or until such time within that period as the debtor may determine by offering to pay the appraised value of the property. The property remains in possession of the debtor subject only to such supervision as to its handling as a court may be able to give and subject to the payment of a reasonable rental. During this period the value of the property may decrease while the indebtedness increases through accumulated interest. The first installment of rent is not payable until the end of one year, so that for at least a year the creditor must sit by while his debt accumulates with no assurance that at the end of that time the debtor will be able to fulfill the obligations imposed upon him, or that he will not deliberately fail to do so.

The wisdom and necessity of protecting the rights of the creditors here is seen upon even a brief examination of their present status. One of the creditors is a sister of the debtor, and her debt, in large part, represents the purchase price which her brothers agreed to pay her for her interest in the property which they had inherited in common. On this debt the debtors owe her $7,000, with accumulated interest for over five years. Another of the debts is represented by bonds held by a guardian for infants, upon which interest has accrued for a considerable period. The real estate in question is largely apple orchard, and the creditors have presented the affidavits of numerous orchardists that the property has been neglected and is being neglected to the point where its value has been greatly impaired. It is alleged that the debtors are making no effort to maintain the value of the property, and that such income as has been received from it has been used by the debtors in wasteful living and in speculation, and that they have neglected maintenance of the property to such an extent as that its value will in a short while be practically destroyed. There is reason to believe that these allegations are true.

While the fact of mismanagement of the mortgaged property may not call into existence any new rights of the creditors, it emphasizes the fact that rights existing in them under the laws of Virginia should be protected and not taken away. And among those rights are that of taking possession and control of the property and making sale of it without a delay which may be, and in this case probably would be, disastrous to their interests.

It might here be added that in my opinion the right which the creditor has in this state to have an absolute and unconditional sale, without a period or opportunity of redemption, constitutes a right of the same class as those enumerated in the Radford Case, which could not be taken away by any congressional enactment.

In the case of W. B. Worthen Co. v. Kavanaugh, 295 U. S. 56, 55 S. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905, the Supreme Court had occasion to consider the validity of an Arkansas statute which was, in many respects, noticeably similar to the Frazier-Lemke Act in its effect upon the rights of creditors. There also the legislation undertook to delay for a prolonged period the time within which a creditor might realize upon his security; there, also, the right to possession of the property given to the creditor by existing law was, by the questioned statute, denied or postponed for a prolonged time. Other substantial rights of the creditor were also taken away. The Supreme Court (opinion by Mr. Justice Cardozo) held the statute unconstitutional as impairing the obligation of contracts. Const. U. S. art. 1, § 10.

There is not, it is true, any specific inhibition in the Constitution that the national government shall not pass any law impairing the obligation of contracts, but it does not follow that Congress is at full liberty to pass any laws it may choose having such effect.

The provisions of the Fifth Amendment to the Constitution that no person shall be deprived of property without due process of law and that private property shall not be taken for public use, without just compensation, form a restriction upon Congress which, in its underlying philosophy and in its purpose, is akin to the restriction imposed upon the states by article 1, § 10. While not identical in terms or in effect, the broad purpose of each is to protect the rights of citizens from destruction by mere

legislative enactment. A state statute such as was considered in Worthen Co. v. Kavanaugh may be held violative of the constitutional provision that a state shall pass no law impairing the obligation of contracts. A statute of similar purpose and effect enacted by Congress may be unconstitutional for the reason that it takes property without due process of law.

In view of the reasoning set forth in Louisville Bank v. Radford, and because I am of opinion that the amended Frazier-Lemke Act does not, in the respects which I have discussed, overcome the objections there upheld, but does, even in its amended form, take away substantial property rights of the creditor amounting to much more than mere matters of remedy, I am forced to hold the law unconstitutional, and to grant the motion to dismiss the proceedings.