**In re LINDSAY.**
No. 2985.

District Court, N. D. Iowa, W. D.
Nov. 27, 1935.

Lew McDonald, of Cherokee, Iowa, for debtor.

Stewart & Hatfield, of Sioux City, Iowa, for mortgagee.

SCOTT, District Judge.

The controversy here presented is between a farmer debtor under section 75 of the Bankruptcy Act, as amended by the Act approved August 28, 1935, com-

monly referred to as the second Frazier-Lemke Act (11 USCA § 203 (g, k, n, p, and s), and the holder of a mortgage in course of foreclosure on the debtor's farm. On November 7, 1934, William Francis Lindsay, the debtor, filed his petition and schedules under section 75 of the Bankruptcy Act, scheduling as his sole asset a 270-acre farm of a scheduled estimated value of $24,000. The debtor schedules as incumbrance on said land, three mortgages; the first being a principal mortgage and a commission mortgage held by Farmers Loan & Trust Company of Sioux City, Iowa, and are scheduled in the amount of $28,007.97. The third mortgage, held by First National Bank of Aurelia, Iowa, scheduled in the amount of $2,738.50. $2,150 indebtedness is scheduled as secured by an assigned lease on the farm. Four other items aggregating $340.85 are scheduled as unsecured. However, these include an item of $112.36, and another item of $90.60, each of which have been reduced to judgment and are liens, and should have been scheduled as secured, junior, however, to the mortgages. The total scheduled indebtedness was, therefore, $34,008.32. The total assets, $24,000. One cow was scheduled at $40, but was claimed as exempt and is not an asset. The prayer of the petition was for leave to obtain a composition or extension of time to pay his debts under section 75, as amended.

The debtor's petition was approved as properly filed and referred to the conciliation commissioner for Cherokee county, who called a first meeting of creditors and gave the requisite notices. The debtor failed to secure conciliation, and asked for an extension of time, which was granted; and at the second meeting also failed to procure the approval of his creditors of his composition proposal. And on the 14th day of June, 1935, the conciliation commissioner returned the record under his certificate, reciting that the debtor was unable to procure a composition or extension, and recommended the dismissal of the proceeding. And thereupon, on the 17th day of June, 1935, the court entered an order dismissing said proceeding. In the meantime, and on May 27, 1935, the original subsection (s) of section 75 (48 Stat. 1289), which I shall refer to as the first Frazier-Lemke Act, was declared unconstitutional by the Supreme Court of the United States.

On August 27, 1935, the Farmers Loan & Trust Company of Sioux City, Iowa, instituted a suit in equity in the district court of Iowa in and for Cherokee county, against the debtor, alleging the execution and delivery of the principal mortgage, and the indebtedness thereby secured in the sum of $29,759.70, and further alleging maturity and default in payment of the indebtedness; and pleading further a provision in the granting clause of the mortgage covering rentals, revenues, and receipts of whatever character produced through the rentals of said property, and praying foreclosure of the mortgage, and the appointment of a receiver in pursuance of the provision of the mortgage to take and hold possession and to apply the rents and profits derived from said premises.

On the 27th day of September, 1935, the debtor filed a motion in this court in pursuance of the second Frazier-Lemke Act, asking that his previous petition be reinstated, and an order was made on the same day reinstating the same. On November 1, 1935, the debtor filed an amended debtor's petition under subsection (s) of the second Frazier-Lemke Act (11 USCA § 203 (s), alleging his occupation as a farmer; his residence on the farm; the filing of his previous petition; his inability to obtain a composition or extension by agreement with his creditors; praying that he be adjudged a bankrupt, and that the court enter a stay order directed to the district court of the state of Iowa for Cherokee county, and any judge sitting in said state court, to stay all proceedings in said foreclosure suit, pending the administration of the debtor's estate in this court, and authorize the appraisement of the debtor's property in the manner provided by said act, and for all other benefits provided in said subsection (s).

On November 4, 1935, and before any reference of said amended petition, the Farmers Loan & Trust Company appeared in this court and filed a motion to dismiss said proceeding, which motion was on the 8th day of November, 1935, superseded by the filing of an amended and substituted motion to dismiss the debtor's petition. The motion sets forth, in substance, the pertinent provisions of the bill to foreclose, including the further allegation that the mortgagor, in violation of the terms of the mortgage and in

fraud of the respondent, has made a written lease covering the premises and sold and assigned the same, and further alleging that the debtor's petition is not filed in good faith.

The motion also challenges the constitutionality of the Act of Congress approved August 28, 1935, upon two grounds, viz.:

"1. The provisions of said Act of Congress under which said petition was filed do not come within the powers delegated to the United States by the Constitution since it is not a bankruptcy act as provided by said Constitution, nor are the provisions thereof prohibited by the Constitution to the states, but on the other hand the provisions thereof relate to matters reserved to the states under the 10th amendment to the Constitution.

"2. The provisions of the Act of Congress under which said petition is filed would amount to the taking of property of your respondent under its liens as set out in Exhibits 'B' and 'C' without due process of law and without just compensation, contrary to the 5th Amendment."

The motion having been brought to the attention of the court, the court issued an order to the debtor to show cause why the motion should not be granted, and in response thereto the debtor appears by counsel and hearing is had.

The motion, therefore, brings up for consideration at the outset all of the pertinent provisions of the act. Section 4, amending subsection (n), 11 USCA § 203 (n), provides in substance: The filing of a petition or answer praying for relief under section 75 as amended, "shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, * * * the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition.

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been con-firmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section. The words 'period of redemption' wherever they occur in this section shall include any State moratorium, whether established by legislative enactment or executive proclamation, or where the period of redemption has been extended by a judicial decree."

Subsection (s), 11 USCA § 203 (s) provides:

"Any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition and/or extension proposal, or if he feels aggrieved by the composition and/or extension, may amend his petition or answer, asking to be adjudged a bankrupt. Such farmer may, at the same time, or at the time of the first hearing, petition the court that all of his property, wherever located, whether pledged, encumbered, or unencumbered, be appraised, and that his unencumbered exemptions, and unencumbered interest or equity in his exemptions, as prescribed by State law, be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under the terms and conditions set forth in this section. Upon such a request being made, the referee, under the jurisdiction of the court, shall designate and appoint appraisers, as provided for in this Act [title]. Such appraisers shall appraise all of the property of the debtor, wherever located, at its then fair and reasonable market value. The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this Act [title]: Provided, That in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal.

"(1) After the value of the debtor's property shall have been fixed by the appraisal herein provided, the referee shall issue an order setting aside to such debtor his unencumbered exemptions, and his unencumbered interest or equity in his exemptions, as prescribed by the State

law, and shall further order that the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances. All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear.

"(2) When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property. Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear. The court, in its discretion, if it deems it necessary to protect the creditors from loss by the estate, and/or to conserve the security, may order sold any unexempt perishable property of the debtor, or any unexempt personal property not reasonably necessary for the farming operations of the debtor, such sale to be had at private or public sale, and may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this Act [title], and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation.

"(3) At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this Act [title]. If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act [title].

"(4) The conciliation commissioner, appointed under subsection (a) of section 75 of this Act [of this section], as amended, shall continue to act, and act as referee, when the farmer debtor amends his petition or answer, asking to be adjudged a bankrupt under the provisions of subsection (s) of section 75 of this Act [of this subsection], and continue so to act until the case has been finally disposed of. The conciliation commissioner, as such referee, shall receive such an

additional fee for his services as may be allowed by the court, not to exceed $35 in any case, to be paid out of the bankrupt's estate. No additional fees or costs of administration or supervision of any kind shall be charged to the farmer debtor when or after' he amends his petition or answer, asking to be adjudged a bankrupt, under subsection (s) of section 75 of this Act [this subsection], but all such additional filing fees or costs of administration or supervision shall be charged against the bankrupt's estate. Conciliation commissioners and referees appointed under section 75 of this Act [this section] shall be entitled to transmit in the mails, free of postage, under cover of a penalty envelope, all matters which relate exclusively to the business of the courts, including notices to creditors. If, at the time that the farmer debtor amends his petition or answer, asking to be adjudged a bankrupt, a receiver is in charge of any of his property, such receiver shall be divested of possession, and the property returned to the possession of such farmer, under the provisions of this Act [title]. The provisions of this Act [title] shall be held to apply also to partnerships, common, entirety, joint, community ownerships, or to farming corporations where at least 75 per centum of the stock is owned by actual farmers, and any such parties may join in one petition.

"(5) This Act [title] shall be held to apply to all existing cases now pending in any Federal court, under this Act [title], as well as to future cases; and all cases that have been dismissed by any conciliation commissioner, referee, or court because of the Supreme Court decision holding the former subsection (s) unconstitutional, shall be promptly reinstated, without any additional filing fees or charges. Any farm debtor who has filed under the General Bankruptcy Act [this title] may take advantage of this section upon written request to the court; and a previous discharge of the debtor under any other section of this Act [title] shall not be grounds for denying him the benefits of this section.

"(6) This Act [title] is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate."

The effect of the foregoing legislation if applied to a subject such as the one in dispute—mortgage real estate with rents and profits pledged; mortgage debt matured and condition broken; mortgage in course of foreclosure, with specific provision in the contract for appointment of a receiver—would be to subject the entire subject to the jurisdiction of the bankruptcy court, primarily presided over by a conciliation commissioner, annul the jurisdiction of a state court already invoked, and after appraisement, through possibly long and complicated proceedings, deliver the possession of any or all of the property over to the debtor for his use, under such terms and for such consideration as the bankruptcy court might in pursuance of the act prescribe, the rental to be paid not to be inconsistent with "the debtor's ability to pay, with a view to his financial rehabilitation."

In these conditions the court would then stay all judicial or official proceedings against the debtor or any of his property for a period of three years, although the debtor under oath in his schedules in effect concedes the inadequacy of the security. At the end of three years or prior thereto, the debtor may pay into court the appraised value of the property, which he retains in possession, with the provision that the secured creditor may demand a reappraisal and ultimately a public sale, subject to 90 days' redemption, and thereupon the debtor to receive full possession and title to the property free and clear of all incumbrances, and to receive his discharge from all debts.

Paragraph (6), the concluding paragraph, is anomalous in its character. It provides: "This Act [title] is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate."

It is difficult to ascribe to this last paragraph a definite and certain legislative intent. However, when some of the other provisions of the act are considered, it appears to be an attempt to invoke the principle of a general police power quite identical with that consid-

ered in Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, which involved a state statute of Minnesota.

■ Before proceeding to a discussion of the constitutional question, it may be well to advert to a matter of practice. The question occurs whether it is permissible to dispose of a matter of this kind on a show cause order, or whether the debtor should be adjudicated and the matter referred to a conciliation commissioner for his action, and then await its reappearance on a petition for review. The latter course seems to have appealed to the Circuit Court of Appeals of the Second Circuit in Fox et al. v. Taubel-Scott-Kitzmiller Co., Inc., 286 F. 351, which presented an analogous situation. The case cited, however, was reversed in Taubel-Scott-Kitzmiller Co., Inc., v. Fox et al., 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770; the Supreme Court evidently finding the record in proper form for final disposition of the case. I think this precedent sufficient authority to warrant disposition of the matter at this stage, without sending the parties over the alternative circuitous course.

■ Recurring to paragraph (6) of subsection (s), merely to determine whether its presence in the act strengthens the act as a whole, I am of opinion that it cannot be given that effect. Police power has been defined as "the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. As applied to the powers of the states of the American Union, the term is also used to denote those inherent governmental powers which, under the federal system established by the constitution of the United States, are reserved to the several states." 12 C. J. 904. "The general police power is reserved to the states. The power to protect the public health and the public safety, to preserve good order and the public morals, to protect the lives and property of their citizens, 'the power to govern men and things' within the limits of their dominions, by any legislation appropriate to that and which does not encroach upon rights guaranteed by the national constitution, nor come in conflict with the acts of congress passed in pursuance of that instrument, is a power

originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the constitution of the United States." 9 Encyc. U. S. Sup. Ct. Reps. 473, citing Gibbons v. Ogden, 9 Wheat. 1, 203, 6 L. Ed. 23, and many other federal cases cited.

United States Constitution, Tenth Amendment, provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Referring to this reserve power of the states, the Supreme Court in New York v. Miln, 11 Pet. 102, 139, 9 L. Ed. 648, said: "It is not only the right, but the bounden and solemn duty of a state, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation, which it may deem to be conducive to these ends; where the power over the particular subject, or the manner of its exercise is not surrendered or restrained, in the manner just stated. That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called internal police, are not thus surrendered or restrained; and that, consequently, in relation to these, the authority of a state is complete, unqualified, and exclusive."

This language has been since and as late as the Milk Price Case, Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469, quoted with approval. The Supreme Court has recently in Home Building & Loan Association v. Blaisdell, supra, held that the so-called moratorium power, such as was considered in that case, is within the reserve power of the state. In the light of these authorities, it is difficult to see how the provision of the Frazier-Lemke Act here under consideration can be accorded any strengthening quality without bringing it in conflict with the Tenth Amendment to the Constitution of the United States. If the power to legislate in this manner is within the reserve power of the state, it by the same token has not been granted to the United States.

■ We now come to consider whether the act under consideration contravenes the Fifth Amendment to the Constitution of the United States, and particularly that clause prohibiting the dep-

rivation of property without due process of law.

The first factor to be considered with respect to this question is the rights of the parties under the law at the time the contract was executed, January 24, 1928. At that time in the state of Iowa it was the right of a holder of a mortgage securing indebtedness to hold without relinquishing any part of his security until the indebtedness should be fully paid, including interest and cost. This right not only attached to the land itself, but, under a contract such as we have here, to the rents, issues, and profits. These were the substantive rights of the mortgagee. The mortgagee's remedial rights were to foreclose on condition broken in any court of competent jurisdiction, subject only to such delays and inconveniences as attend the usual practice of courts of equity. With respect to the rents, issues, and profits, under the contract and settled law of this state, the mortgagee was entitled to the appointment of a receiver to collect, conserve, and apply them, subject only to such delays and diminutions as attend administration in equity. Upon decree of foreclosure and judicial public sale in due course, the mortgagee had the right to bid and purchase, and at the end of one year from the date of sale to receive a deed to the property. Section 11774 of Iowa Codes 1924, 1927, 1931. In case the property sold should not bring the full amount of the mortgage debt with interest and costs, receivership during the year accorded for redemption may be continued to collect, conserve, and apply the rents, issues, and profits to the unsatisfied portion of the judgment.

The question now presented is, To what extent does the Frazier-Lemke Act, approved August 28, 1935, affect the property rights of the mortgagee as they exist under the laws of the state and under its contract? First. It subjects the entire subject to the jurisdiction of the bankruptcy court presided over by a conciliation commissioner, and withdraws it from the jurisdiction of any court theretofore acquiring jurisdiction, defeating that provision of the contract which entitles it to a receiver and to conserve the rents, issues, and profits. Second. After effecting an appraisement of the property, the referee shall order that the possession under the supervision and control of the court (the conciliation commissioner) of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor. In this way, without the consent of the mortgagee, the property may be severed and parceled out for the benefit of the debtor and possibly greatly to its damage as a security. Third. When the conditions set forth in the earlier provisions of the act have been complied with, paragraph (2) of section 6, provides, mandatorily, that the court shall stay all proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years; and during such three years the debtor to retain possession of all or any part of the property, subject to his paying a reasonable rental semiannually, but the first payment only to be made within one year from the date of the order. Thus, considering the involved and numerous proceedings preceding the order referred to, it is quite possible that two years might elapse before any rentals would be paid. Fourth. At the end of three years (which may be four years from the time the original petition was filed, considering the procedure and the rights of appeal) the process then again begins of fixing a new valuation or of obtaining a judicial sale, the time not to be fixed by the mortgagee subject only to the supervision of a court, but at the discretion of a conciliation commissioner, except as controlled upon appeal. Fifth. The amount of any payments over rent to be made by the debtor upon the debt in the meantime out of the issues of the property is not alone controlled by its earning capacity, but must not be inconsistent with "the debtor's ability to pay, with a view to his financial rehabilitation."

It seems to me that the language of Mr. Justice Cardozo in Worthen Co. v. Kavanaugh, 295 U. S. 56, 55 S. Ct. 555, 557, 79 L. Ed. 1298, 97 A. L. R. 905, may be aptly used here: "With studied indifference to the interests of the mortgagee or to his appropriate protection they have taken from the mortgage the quality of an acceptable investment for a rational investor."

Viewed in the light of the general purpose of the act and its effect upon the rights of the holder of the mortgage as they have become fixed under the state

law, I am of opinion that the act contravenes the Fifth Amendment to the Constitution of the United States, and to that extent is void. In the following cases the same conclusion seems to have been reached: In re Young (D. C.) 12 F. Supp. 30; In re Lowman (Lafayette Life Insurance Company v. Bertha A. Lowman, debtor), 79 F.(2d) 887, decided by the United States Circuit Court of Appeals for the Seventh Circuit, November 15, 1935. Inasmuch as the farm land in question is the only asset that could be administered in a bankruptcy proceeding, with the exception of a single cow, which could only be set aside as exempt to the debtor, I incline to the opinion that the petition of the debtor should not be referred, but that the debtor be given the privilege of expressing his election whether to be adjudicated a bankrupt and having the matter referred to the regular referee for administration, with the privilege to petition for discharge under the general provisions of the Act of 1898, as otherwise amended (11 USCA); or, on the other hand, having the petition dismissed without prejudice to filing a new petition to be adjudicated. An order will be entered so providing.