## MACHEN v. UNITED STATES.

### No. 4108.

Circuit Court of Appeals, Fourth Circuit.

Jan. 15, 1937.

H. Vernon Eney, of Baltimore, Md. (Alexander Gordon, III, of Baltimore, Md., on the brief), for appellant.

Harry LeRoy Jones, Atty., Department of Justice, of Washington, D. C. (James W. Morris, Asst. Atty. Gen., Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., both of Baltimore,

Md., and Edward First, Atty., Department of Justice, Clarence V. Opper, Asst. Gen. Counsel, Treasury Department, and Bernard Bernstein, Atty., Treasury Department, all of Washington, D. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is a suit by the holder of a $1,000 3½ per cent. First Liberty Loan bond to recover of the United States the amount of the interest coupon for $17.50 due December 15, 1935. The government's defense is that the bond was called for payment on June 15, 1935, and that by express provision of the bond itself interest ceased after that date and the coupons thereafter maturing became void. Plaintiff contends in reply to this that the call for payment and notice issued thereon were invalid to stop the running of interest because, under the acts of Congress in effect at that time, the bond could not be paid in gold according to the promise therein contained and because 'the currency in which payment was tendered was based upon the "devalued" dollar instead of upon the standard of value in effect at the time the bonds were issued. The facts were stipulated and from judgment thereon for the government, the plaintiff has appealed. The pertinent provisions of the bond are as follows: "The. United States of America for value received promises to pay to the bearer the sum of one thousand dollars on the 15th day of June, 1947, with interest at the rate of three and one-half per centum per annum payable semi-annually on December 15 and June 15 in each year until the principal hereof shall be payable, upon presentation and surrender of the interest coupons hereto attached as they severally mature. *The principal and interest of this bond shall be payable in United States Gold coin of the present standard of value,* and shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any State or local taxing authorities. * * * All or any of the bonds of the series of which this is one may be redeemed and paid at the pleasure of the United States on or after June 15, 1932, on any semi-annual interest payment date or dates, *at the face value thereof and interest accrued at the* *date of redemption, on notice published at least three months prior to the redemption date* and published thereafter from time to time during said three months' period as the Secretary of the Treasury shall direct. If in any case less than all of the bonds of said series are to be redeemed, the bonds to be redeemed will be determined by lot by such method as may be prescribed by the Secretary of the Treasury. From the date of *redemption* designated in any *such notice,* interest on the bonds called for redemption shall cease, and all coupons thereon maturing after said date shall be void." (Italics ours.)

The notice calling the bond for payment was in the usual form; and there is no question but that it would have had the effect of stopping the running of interest and avoiding the coupons maturing after June 15, 1935, except for the legislation of Congress affecting the currency, which limited the power of the Secretary of the Treasury and must be read into the notice. At the time of the issuance of the bond the gold dollar was the standard of value in our monetary system and was defined by law as consisting of 25.8 grains of gold nine-tenths fine. Act of March 14, 1900, c. 41, § 1, 31 Stat. 45, 31 U.S.C.A. § 314. And the statutes provided for the use of gold coin as a medium of exchange. R.S. § 3511. By Presidential Proclamation of January 31, 1934 (No. 2067, 31 U.S.C.A. § 821 note) issued under the Act of May 12, 1933 (48 Stat. 52, 53) as amended by the Act of January 30, 1934 (48 Stat. 342, 31 U.S.C.A. § 821) the content of the dollar was reduced to 15⅝₁ grains of gold nine-tenths fine; and, at the time of the publication of the notice calling the bond for payment, gold coin had been withdrawn from circulation, its possession had been prohibited under penalty, and payment in gold coin by the United States had been prohibited. 48 Stat. 337, 340 (31 U.S.C.A. §§ 441–443, 315b). By joint resolution of June 5, 1933 (48 Stat. 112, 113 [31 U.S.C.A. §§ 462, 463, 821]) the payment of gold clause bonds in any legal tender currency "dollar for dollar" had been authorized; and it was paper currency based on the 15⅝₁ grain dollar, and nothing else, that was offered in payment of gold clause bonds which were called for payment by the Treasury. The notice of redemption calling the bond in question for payment was equivalent, therefore, to a notice that the United States elected to redeem the bond in paper currency based on a 15⅝₁

grain dollar, notwithstanding that it was payable in gold coin based on a 25⁹⁄₁₀ grain dollar and might be redeemed only at its face value.

In Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 435, 79 L.Ed. 912, 95 A. L.R. 1335, the Supreme Court held the joint resolution of June 5, 1933 [31 U.S. C.A. §§ 462, 463], invalid in so far as it affected gold clause bonds of the government because it was in conflict with art. 1, § 8, Cl. 2, of the Constitution, authorizing Congress to borrow money on the credit of the United States, and with section 4 of the Fourteenth Amendment to the Constitution, providing that the validity of the public debt of the United States shall not be questioned. The court quoted with approval from the Sinking Fund Cases (Union P. R. Co. v. U. S., 99 U.S. 700, 25 L.Ed. 496) "The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is·as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." And to this the court added: "The Congress as the instrumentality of sovereignty is endowed with certain powers to be exerted on behalf of the people in the manner and with the effect the Constitution ordains. The Congress cannot invoke the sovereign power of the people to override their will as thus declared. The powers conferred upon the Congress are harmoni‧ous. The Constitution gives to the Con‧gress the power to borrow money on the credit of the United States, an unqualified power, a power vital to the government, upon which in an extremity its very life may depend. The binding quality of the promise of the United States is of the essence of the credit which is so pledged. Having this power to authorize the issue of definite obligations for the payment of money borrowed, the Congress has not been vested with authority to alter or destroy those obligations. The fact that the United States may not be sued without its consent is a matter of procedure which does not affect the legal and binding character of its contracts. While the Congress is under no duty to provide remedies through the courts, the contractual obligation still exists, and, despite infirmities of procedure remains binding upon the conscience of the sovereign."

In the Perry Case it was held that the holder of a gold clause United States government bond who had demanded payment in gold upon the calling of his bond was not entitled to recover damages for breach of the government's contract to pay in gold, because as gold had been withdrawn from circulation as a monetary medium of exchange, there was no standard by which such damage might be measured. In the pending case, however, the plaintiff is not seeking payment of the interest in gold nor suing for damages by reason of the failure of the government to pay the interest in gold. On the contrary, the plaintiff is willing to accept the interest in legal tender currency, dollar for dollar, and the suit is based on the theory that the government can hasten the maturity of the bonds and thereby stop the running of interest and avoid the subsequently maturing coupons, only by complying with the terms of the contract contained in the bonds themselves, which authorize redemption at face value upon the giving of three months notice. It is argued by the government that as the court in the Perry Case did not deny the right of the holder of the bonds to sue the United States, the implication is that the call was valid, for otherwise the bondholder would have had no right to sue for the principal of the debt; but the question of the validity of the call was not raised in that case and was not considered by the court.

The decision in Morgan v. United States, 113 U.S. 476, 5 S.Ct. 588, 28 L.Ed. 1044, relied upon, with the Perry Case, by the learned judge below, is not an authority against the position of plaintiff. That case merely holds that when notice of redemption of government bonds is given in accordance with their terms, they become payable on demand without interest after the maturity of the call. The question here is whether there was such an exercise of the right of redemption by the call as to stop the running of interest and avoid the interest coupons.

The argument of the government and the decision of the Court of Claims in Dixie Terminal Co. v. United States, —— Ct.Cl. ——, to which our attention is called, proceed upon the theory that the provision of the bond providing for notice, upon which interest is to cease and coupons subsequently maturing are to become void, is to be construed as though it were independent of the provision for redemption which it follows, i. e., that a notice is sufficient which states that the bonds will be redeemed on the named date, even though

it does not say or mean to say that they will be redeemed in accordance with their terms. We think that the position is unsound and that, under the decision in the Morgan Case, supra, the provision as to notice must be construed as a part of the provision for redemption. The bonds were not finally payable until June 15, 1947. The government was given an option to redeem on or after June 15, 1932; but this option was to redeem them "at the face value thereof and interest accrued at the date of redemption, on notice published at least three months prior to the redemption date." Interest was to cease and subsequently maturing coupons were to be void "from the date of redemption designated in any such notice," i. e., from the date of redemption designated in a notice calling the bonds for redemption "at the face value thereof and interest accrued prior to the redemption date." It is manifest that when the bonds were payable in gold coin of the standard of value at the time of issue, i. e., 25⁵⁄₁₀ grains of gold to the dollar, a proposal to redeem them in paper money based upon 15⁵⁄₂₁ grains of gold to the dollar was not a proposal to redeem them at face value; and a notice that the government would redeem them on such basis, which is what the notice in question means when considered as it must be in connection with the legislation binding upon the Secretary of the Treasury, was not such a notice as the bonds prescribed for the exercise of the option retained by the government. It would hardly be contended that a notice to the effect that the government would redeem the bonds at 59 cents on the dollar would be a sufficient notice under the bond to stop the running of interest and avoid the subsequently maturing coupons; but it will be seen that this is precisely what the notice as published means when the acts of Congress and the presidential proclamation affecting the currency are read into it, and when it is remembered that Congress is without power to abrogate the gold clause as contained in obligations of the government.

██  It is suggested that the legislation and proclamation affecting the currency, to which we have referred, should be held invalid so far as government obligations are concerned, and that when this is done the notice should be construed as offering to pay the face value of the bonds. The answer to this is that whatever the validity of the legislation and the proclamation in question, so far as impairing the obligations of the government is concerned, they are unquestionably valid as limitations upon the power of the Secretary of the Treasury. He is forbidden by them to pay gold out of the Treasury, and he is allowed to pay obligations in currency only "dollar for dollar" notwithstanding such obligations may contain a gold clause. It seems clear that, even though Congress may not under the Constitution question the obligations of the government, it may control the disposition of the gold in the treasury and may direct how the resources of the government may be used in the discharge of its obligations. Cf. Perry v. U. S., 294 U.S. 330, at page 356, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335. It follows that, because of the legislation and the Presidential Proclamation to which we have referred, the Secretary of the Treasury was without power, both at the time of the publication of the notice and at the time fixed for redemption, either to pay gold on the gold clause bonds or to pay in paper money the value of the gold which they promised. He was consequently without power under the law to redeem these gold clause bonds at their face value; and the notice of redemption which he issued must be construed in the light of this lack of power.

██  It is suggested that the notice must be read without reference to the legislation and the Presidential Proclamation affecting the currency, on the ground that the notice was given by the government in its private capacity as a borrower whereas the legislation and proclamation issued pursuant thereto were the exercise of governmental powers. We see no basis for such a position. It is elementary that laws which subsist at the time and place of the making of a contract enter into and form a part of it as fully as if they had been incorporated in its terms. Farmers' & Merchants' Bank v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 67 L. Ed. 1157, 30 A.L.R. 635; Worthen Co. ex rel. Board of Com'rs v. Kavanaugh, 295 U.S. 56, 60, 55 S.Ct. 555, 79 L. Ed. 1298, 97 A.L.R. 905. A fortiori, laws affecting and limiting the means of payment must be read into a governmental notice promising payment. When the Secretary of the Treasury has been forbidden by law to pay gold out of the treasury and has been required to discharge bonds tendered for redemption with currency based on a 15⁵⁄₂₁ grain dollar, it is idle to contend

that a notice to redeem means that he stands ready to redeem in accordance with the promise of the bond, i. e., in gold coin based upon a 25⁹⁄₁₀ grain dollar.

■■ It is argued that if gold coin had been paid plaintiff in accordance with the terms of the bond, he would have been required to surrender same to the government at once and accept legal tender currency in lieu thereof, and that therefore the tender of currency based on the devalued dollar was substantial compliance with the condition of redemption; but if the government could nullify its promise as contained in the gold clause in this way, the gold clause would mean nothing. In the Perry Case, the majority of the court were of opinion that the government, although immune from liability in the action, was bound by its obligation contained in the gold clause, notwithstanding the exercise by it of the constitutional power to regulate the currency. This is made very clear by considering the opinion of the concurring Justice in connection with the opinion of the court. Since this is so, the contract as contained in the gold clause remained in effect notwithstanding the legislation to which we have referred and the proclamation issued thereunder; and the running of interest on the bond sued on could not be stopped or the interest coupons avoided except by compliance with the provision for redemption, which, as we have seen, has not been complied with. Since the plaintiff is willing to accept payment of interest in the present currency, the question does not arise as to whether he is entitled to have same paid in gold.

No amount of argument can obscure the real situation. It is this: The government has promised to pay the bonds in question in gold coin of the standard of value prevailing in 1917. By their terms, it is permitted to redeem them only by paying them at their face value. It is proposing to redeem them, not by paying them at that face value, but in paper money worth only about 59 per cent. thereof. The notice which it has issued means this and nothing else. Such a notice is not in accordance with the condition of redemption specified in the bond, and consequently does not stop the running of interest or avoid the coupons.

For the reasons stated, we think that there was error in entering judgment for the government upon the facts as stipulated.

Reversed.