TROTT, Circuit Judge,
with whom GOODWIN, Circuit Judge, joins, concurring:
The resolution of this case as a matter of granting summary judgment to the drivers is far from simple, as the length and complexity of Judge Fletcher’s meticulous opinion demonstrates. It has not been made easier by FedEx’s brief, which, by quoting part of a sentence from an admission — but not all of it — creates a rosier picture of the drivers’ state of mind than the record supports.
FedEx represents in its brief, and I quote, that each of the drivers personally “intended to enter an independent contractor relationship with [FedEx].” What the brief omits are the important words that precede this language and the final sentence in the drivers’ response. This is what the drivers admitted:
Named plaintiffs admit that on the day they signed their original Operating Agreement, in reliance on Defendants’ statements that they would be an independent contractor, they intended to enter into an independent contractor relationship with Defendants. Named Plaintiffs deny, however, that an independent contractor relationship ever, in fact, existed between them and Defendants.
Response to Request for Admission No. 1 (emphasis supplied). The meaning of this response read as a whole is that the drivers believed they were becoming true independent contractors, but the reality they encountered was different.
We also find the actual meaning of the drivers’ “admission” in this case in a companion case, Slayman v. FedEx Ground Package System, Inc., Nos. 12-35525 and 12-35559. In that case, drivers pursued a personal claim in Oregon district court for *998 rescission, claiming fraud. In denying summary judgment to both parties on the sole ground that the claim was not timely, the district court noted that “[deposition testimony indicate[d] that soon after becoming a driver, each plaintiff believed that the [Operating Agreement], despite its express terms, did not give the driver the control he expected as an independent contractor.” Slayman v. FedEx Ground Package Sys., Inc., 3:05-cv-1127-HZ, 2012 WL 1902601, at *7 (D.Or. May 25, 2012). All that glittered turned out not to be gold.
Once again, we learn the regrettable lesson that the basic information we require to resolve a controversy is not always found in the parties’ briefs, but in the ungilded record itself. A good rule in this business is to verify before you trust. Lawyers would be well advised not to elide the truth, the whole truth, and nothing but the truth.
Judge Fletcher’s analysis of the demands of California law is correct. Although Estrada went to the Court of Appeal after a contested trial — not on a grant of summary judgment to the drivers — we would be misguided to ignore what the California Court of Appeal said in that case, as well as the particulars of the test set out by the California Supreme Court in Borello, which does not embrace the “entrepreneurial opportunities” test, as a gloss or otherwise.
Abraham Lincoln reportedly asked, “If you call a dog’s tail a leg, how many legs does a dog have?” His answer was, “Four. Calling a dog’s tail a leg does not make it a leg.” Justice Cardozo made the same point in W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 62, 55 S.Ct. 555, 79 L.Ed. 1298 (1935), counseling us, when called upon to characterize a written enactment, to look to the “underlying reality rather than the form or label.” The California Supreme Court echoed this wisdom in Borello, saying that the “label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.” 256 Cal.Rptr. 543, 769 P.2d at 403. As noted by Judge Fletcher, “[N]either [FedEx’s] nor the drivers’ own perception of their relationship as one of independent contracting” is dispositive. JKH Enters., Inc., 48 Cal.Rptr.3d at 580.
Bottom line? Labeling the drivers “independent contractors” in FedEx’s Operating Agreement does not conclusively make them so when viewed in the light of (1) the entire agreement, (2) the rest of the relevant “common policies and procedures” evidence, and (3) California law. As Judge Fletcher points out, the MDL decision to the contrary relied on an inappropriate consideration: the entrepreneurial opportunities factor.
Although our decision substantially unravels FedEx’s business model, FedEx was not entitled to “write around” the principles and mandates of California Labor Law by constructing a contract which, after a contested trial, the California trial court in Estrada called:
[A] brilliantly drafted contract creating the constraints of an employment arrangement with [the drivers] in the guise of an independent contractor model — because FedEx not only has the right to control, but has close to absolute control over [the drivers] based upon interpretation and obfuscation.
Estrada, 64 Cal.Rptr.3d at 334 (brackets in original) (internal quotations marks omitted). The Court of Appeal in that case appropriately called the trial court’s observation an application of the looks like, walks like, swims like, and quacks like a duck test. See id. at 335.
Accordingly, I concur in Judge Fletcher’s persuasive opinion.