JULIUS S. RIPPEL, RUSSELL V. ADAMS, FRANK C. FERGUSON, FRANK E. QUINBY, WILLIAM K. PATON, J. A. RIPPEL, W. E. WETZEL AND HORACE K. CORBIN, MEMBERS OF THE PROTECTIVE COMMITTEE FOR SECURITY HOLDERS OF CITY OF ASBURY PARK, NEW JERSEY, PETITIONERS, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS.

Argued January 20, 1937—Decided March 2, 1937.

Before Justices TRENCHARD, BODINE and HEHER.

For the petitioners and Adams & Mueller, intervenors, *McDermott, Enright & Carpenter* (*James D. Carpenter, Jr.,* of counsel).

For the municipal finance commission of the State of New Jersey, *William A. Stevens* (*E. J. Dimock, Arnold Frye* and *V. L. Visscher,* of counsel).

For the defendant city of Asbury Park, *Ward Kremer* and *Harry Cassman.*

The opinion of the court was delivered by

HEHER, J.   Since March 7th, 1935, the municipal finance commission, created by chapter 340 of the laws of 1931 (*Pamph. L., p.* 830), as amended, has, in virtue of an appropriate order, exercised its statutory function in relation to the business and affairs of the defendant municipality, city of Asbury Park.

The petitioners represent the holders of unpaid matured bonds and notes aggregating in excess of the principal sum of $1,500,000.   Their claims so arising have not been reduced to judgment.   They are all residents of this state.   They seek a peremptory writ of *mandamus* commanding the defendant municipality and its proper officers to make an "assessment, levy, and collection of a sum sufficient to pay all interest owing by the city at the contract rate, in arrears, less the amounts appropriated in past budgets, and which will accrue through 1936, or in the alternative at least $700,000, to be applied on account of the principal and interest of the obligations" of the municipality "for the year 1936, and for an annual levy, assessment, and collection of taxes by" it "for the equal and ratable payment of installments of principal and interest" among its creditors, "in an amount sufficient to discharge in such time as may be fixed by the court the debt of such city."   The petition was filed on January 4th, 1936, pursuant to an order entered herein on notice to the finance commission, under section 352 of the cited statute, as amended by chapter 50 of the laws of 1936 (*Pamph. L., p.* 134), authorizing petitioners to institute, for the benefit of all creditors, *mandamus* proceedings to compel the levy of taxes necessary for the enforcement of their claims.   The instant rule, directing the defendant municipality and certain of its officers

to show cause why the writ should not issue, was allowed on the same day, but was not brought on for argument until the current term. It contained a provision making the finance commission and all other creditors of the municipality parties to the proceeding.

On December 14th, 1936, the finance commission, in accordance with the authority conferred by section 201 of the statute, as amended by chapter 192 of the laws of 1935 (*Pamph. L., p.* 467), formulated and certified to the governing body of the municipality resolutions providing for the refunding of the indebtedness in question by the issue of bonds under a plan calling for a debt service levy in the year 1937, and each year thereafter, sufficient to render an actual annual yield of $630,000, but adoption of the plan by the municipality has not yet been had.

On December 29th, 1936, the United States District Court for the district of New Jersey, in an action brought by the non-resident bondholders, granted a peremptory writ of *mandamus* to compel an annual tax levy, supplementing "regular" taxes, in the sum of $87,381, the non-resident security-holders' proportionate share of the yearly debt service levy thus proposed by the finance commission. Thereafter, the commission filed a petition herein, setting forth these facts and praying for a *mandamus* directing the municipality to make an additional annual tax levy of $542,619, the balance of this debt service levy. The commission, in the presentation of the petition, invoked the authority conferred upon it by section 352 of the statute, *supra,* to institute *mandamus* or other appropriate proceedings "for the assessment, levy or collection of taxes by such municipality for the payment of principal and/or interest of the indebtedness of the municipality found to be outstanding * * *."

It is to be observed here that judicial sanction of "a plan of adjustment or composition" of the outstanding claims, submitted by the creditors under chapter 331 of the laws of 1933 (*Pamph. L., p.* 866), is conditioned, among other things, upon the joint approval of the municipality, the finance commission, and creditors "representing eighty-five per centum (85%) in amount of the indebtedness."

The municipality, while insisting that, for reasons which, as will presently appear, are irrelevant to this inquiry, and therefore need not be considered, neither the refunding scheme adopted by the finance commission nor the one proposed by the petitioning creditors should be imposed upon it, concedes its ability to raise annually by tax levy the total sum of $514,000, for application to the payment of its indebtedness to both resident and non-resident security-holders.

Thus there is presented for consideration, entirely apart from the relative merits of the several refinancing proposals submitted, the narrow question of the present financial capacity of the municipality, saving the ability to render performance of its essential public functions and to secure its financial resources against substantial impairment.

The statutory scheme was designed to secure, through the agency of the finance commission, a formula for liquidation, as speedily as may be reasonably possible, of the obligations in default. The commission is charged with the duty of attaining economic stability, without a cessation of essential municipal function, through a solvent that will also provide to the unsatisfied creditor every reasonable remedy for the enforcement of his contract. Considerations of public policy, grounded in a sound economy, ordain that the taxing power shall be reasonably used. Its unbridled exercise ordinarily frustrates the ultimate purpose, to say nothing of the hardship and loss inflicted upon the taxpayer, and pushing it to the extreme in an attempt to raise the moneys necessary for the satisfaction of a relatively large indebtedness ofttimes renders the remedy inefficacious, as well as subversive of the public interest. Such is plainly the genius of the statute, enacted as an emergency measure. A departure from this principle to the detriment of the creditors would clearly infringe the constitutional guaranties against impairment of the obligation of their contracts.

And so, it is the duty of this court, in the circumstances, to award *mandamus* for the enforcement of these contracts. See *Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143.

In respect of the *quantum* of the levy, we are of opinion

that the finance commission has reasonably measured the ability of the municipality to liquidate its obligations. It is the result of a long, painstaking and disinterested study of its financial problems; and we find nothing in the proofs to justify the claim of exaggeration.

Moreover, the award of a *mandamus* for the sum requested by the commission will serve the essential statutory policy of equality between creditors of the same class. It puts the resident and non-resident creditors upon the same footing. It is of no consequence that the former's claims have not been reduced to judgment. Section 352 of the statute, *supra,* expressly so provides. Parity is the manifest design of this provision.

Let a peremptory writ of *mandamus* issue in accordance with the prayer of the commission's petition. It shall command the raising by a tax levy of $542,619, in addition to the sum provided by the writ issued by the federal District Court. Provision shall be made for the raising of this sum by adding thereto an amount equal to 86.13 per cent. of one-fifth of the total amount of taxes levied for the preceding year which are uncollected in cash at the end of said preceding year. The sum thus required shall be paid to the sheriff of the county of Monmouth annually on or before the fifth day of June. These yearly levies and payments shall continue until the claims, with interest at six per cent. on unpaid balances, are fully satisfied. In view of the pendency of proceedings relating to the refunding of the indebtedness, and the fact that petitioners' claims have not been judicially established, the sheriff shall hold the moneys so paid to him subject to the order of this court.