FAITOUTE IRON & STEEL COMPANY, A CORPORATION, AND MOSES W. FAITOUTE, APPELLANTS, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, RESPONDENT.

Argued May 22, 1941—Decided September 19, 1941.

For the appellant, *Arthur T. Vanderbilt, John A. Ackerman* and *G. Dixon Speakman.*

For the respondent, *Ward Kremer.*

The opinion of the court was delivered by

BODINE, J. The appeal is from an order striking the complaint. It contained four counts. The corporation and the individual plaintiffs are both residents of this state and are the owners of certain bonds issued by the defendant municipality which are in default and have not been paid as agreed. The city moved to strike the complaint, in that the city had in operation an approved refunding plan and the payment of the bonds in suit was controlled thereby

pursuant to *N. J. S. A.* 52 :27-1, *et seq.*, and *N. J. S. A.* 52 :27-34, *et seq.*, and lastly that permission of the New Jersey Supreme Court, a statutory requisite, to the institution of the present proceeding had not been obtained.

It appears that on March 7th, 1935, the City of Asbury Park was placed under the control of the Municipal Finance Commission pursuant to the provisions of *N. J. S. A.* 52 :27-1, *et seq.* The city was, at that time, in default in the payment of interest on its bonded indebtedness. On February 1st, 1936, a plan for the refunding of its bonded debt was filed in the Supreme Court pursuant to the terms and provisions of *N. J. S. A.* 52 :27-34, *et seq.*, and the court took jurisdiction of the proceedings. The plan provided for the refunding of $10,750,000 of outstanding bonds and included among the bonds to be refunded were the bonds mentioned in the complaint. The plan, as amended, was approved by an order dated July 21st, 1937. The order provided that the plan, before becoming effective, should be approved by creditors representing eighty-five per centum in amount of the indebtedness affected and approval to be evidenced in writing, in accordance with the terms and provisions of the statute in such case made and provided (*N. J. S. A.* 52 :27-36).

On September 28th, 1937, the Municipal Finance Commission of this state, by resolution, approved the amended plan, providing the requisite number of creditors should consent thereto in accordance with the statute.

On April 29th, 1938, creditors representing in excess of eighty-five per centum in amount of the indebtedness affected consented to the plan, so that an order was then entered in the court approving the refunding plan and approving the adjustment or composition therein contained in accordance with the statute (*N. J. S. A.* 52 :27-36).

The refunding plan was put into operation June 15th, 1938, and the bondholders, who had consented in writing to the terms and provisions of the refunding plan, exchanged their outstanding bonds for new bonds issued to them in accordance with the terms of the plan.

The plan seems to have been fair and in all respects equitable.

The first question for us to determine is: Could the court strike the complaint which alleged a perfectly good cause of action and, which, without proof of the refunding plan, would have stood?

The adoption of the refunding plan, under the circumstances of this case, was or was not a defense which barred the action. Such a defense, since it goes to the whole action, should have been raised by answer. The complaint, as before noted, did not fail to state a cause of action and it was not sham. The statute provides when a complaint may be struck (*N. J. S. A.* 2:27-125). A motion to strike, like a common law demurrer, admits every fact well pleaded; so it is a curious departure to strike a complaint because of allegations contained in affidavits filed by the moving party. The proper practice is suggested in the following cases: *Gross* v. *New York C. R. R. Co.,* 99 *N. J. L.* 414; *Brooks* v. *Metropolitan Life Insurance Co.,* 70 *Id.* 36; *Fidelity Union Trust Co.* v. *Pavlovsky,* 17 *N. J. Mis. R.* 10; *Koewing* v. *West Orange,* 89 *N. J. L.* 539; *Tanis* v. *Passaic County,* 122 *Id.* 486; *Lully* v. *National Surety Co.,* 106 *Id.* 81, 83.

The point is also made that the affidavits used state opinions and not fact. This, of course, is ordinarily a fatal defect. The real question was the constitutionality of the refunding act. The material facts in the case are not in dispute. We will treat the pleadings as though amended and consider the merits since the question presented is one which should be speedily determined. If there had been a disputed fact issue the court, in the absence of consent, could not have passed upon the merits. *Standard Radio Corp.* v. *Triangle Radio, &c.,* 125 *N. J. L.* 131.

This brings us to the constitutional question. Appellant argues that the composition statute (*N. J. S. A.* 52:27-34, 39) is unconstitutional since it impairs the obligation of contract. We have held its predecessor not faulty. *Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143.

Mr. Justice Heher, in that case (at *p.* 149), said of the statute: "The act confers upon the finance commission, in respect of the municipality's financial affairs, powers somewhat akin to those exercised by receivers of insolvent corpo-

rations. * * * Its primary purpose is to keep intact the corporate structure, and to continue municipal function until rehabilitation can be effected. This is, of necessity, a proper legislative function, and the rights of creditors, in such a situation, are secondary. It is a proper exercise of the police power. It is a well established doctrine that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts entered into between individuals may thereby be affected."

*N. J. S. A.* 52:27-65 is as follows: "It is declared that this chapter is intended by the legislature to meet the public emergency arising from a default in the payment of municipal and school district obligations and the resulting impairment of public credit, requiring intervention by the state to provide for the payment of existing obligations in such a way as to cause the least embarrassment to property owners as taxpayers, and that this chapter is remedial in nature and the powers hereby granted shall be liberally construed."

At the time of the adoption of the plan, pursuant to the statute, the credit of Asbury Park had suffered greatly. The bonds issued to the plaintiffs long before the enactment of the statute had little value. The new bonds issued under the plan are not in default and there is a very substantial market for them.

It is argued that a municipal bankruptcy act is within the exclusive jurisdiction of Congress. *United States* v. *Bekins,* 304 *U. S.* 27. The statute there approved was passed in 1937 (50 *Stat.* 654). Our statutes were of 1931-1933 origin.

The court proceedings thereunder were initiated February 1st, 1936. No obligation of contract was discharged but provision was made, under the supervision of competent judicial authority, for the collection of the debts owed by a municipality then in default by a fair means. How little the bondholder's right is changed is illustrated by *Lyon* v. *Elizabeth,* 43 *N. J. L.* 158; *Piscataway Township* v. *First National Bank of Dunellen,* 111 *Id.* 412; *Vanderpood* v. *Mount Ephraim, Id.* 423.

The holder of a defaulted municipal bond, before the statute, could take judgment and enforce payment only by *mandamus*, a discretionary writ. Under the plan in question, a bondholder secures a new remedy for an existing right—a remedy uniform to all in the same class and well within the legislative power. If we assume the act had not been passed and all bondholders had secured judgments, they would then have had to go to the Supreme Court for writs of *mandamus* to secure payment. The court would, no doubt, have provided some means for enforcing the judgments so as to do no irreparable public injury. What more appropriate than a legislative plan to secure payment under the supervision of a commission and the court. The plan is fair alike to the bondholders and the citizens dependent upon good government. Of course, priorities cannot be destroyed under such a plan. *State, ex rel. Phelps* v. *Fort Lee*, 14 *N. J. Mis. R.* 895; *affirmed*, 118 *N. J. L.* 181.

Lastly, we cannot regard the federal enactment as one that puts to sleep the state power to provide an equitable means for the collection of municipal obligations, or as invalidating a prior proceeding taken under a state statute in good faith. It is not to be supposed that the sovereign may not provide a means which insures payment of defaulted municipal obligations in an orderly manner.

The judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—THE CHANCELLOR. 1.