18

MURDOCH v. CITY OF ASBURY PARK.

District Court, S. D. New York.
July 30, 1942.

Thomson, Wood & Hoffman, of New York City (Charles H. Tuttle, Stoddard B. Colby, David M. Wood, John B. Dawson, and Eli Bronstein, all of New York City, of counsel), for plaintiff.

Hawkins, Delafield & Longfellow, of New York City (E. J. Dimock, of New York City, Joseph F. Mattice, of Asbury Park, N. J., and Henry E. Russell, of New York City, of counsel), for defendant, appearing specially for the purpose and only for the purpose of this motion.

COXE, District Judge.

Defendant, a municipal corporation of the State of New Jersey, appearing specially, moves under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to set aside the service of the process and the levy of attachment, to vacate the order for the service of the process by publication and the warrant of attachment, and to dismiss the action.

The action is brought to recover a balance of $696,582.28, plus interest of $62,-147.07 due upon a judgment obtained by plaintiff's assignors against the defendant in the District Court of the United States for the District of New Jersey on February 21, 1935. The judgment was based upon various defaulted bonds and interest coupons, which bonds were issued for the purpose of temporarily financing the construction of a pavilion or building for public resort and recreation and for public exhibitions, lectures and assemblages, including apparatus and furnishings, and for the punctual payment of which the faith and credit of the defendant were pledged. Christmas v. City of Asbury Park, D.C., 10 F.Supp. 22.

Prior to the entry of the judgment, and on January 19, 1935, creditors of the defendant had applied to the New Jersey Supreme Court for relief under the New Jersey Municipal Finance Act, N.J.S.A. 52:-27–1 et seq., and thereafter, and on March 7, 1935, the New Jersey Municipal Finance Commission was placed in control of the defendant's finances.

 Under the laws of New Jersey, the real and personal property of a municipal corporation, held and used for its corporate purposes, is exempt from levy and sale by execution; and a writ of execution is issued simply for the purpose of laying a foundation for a mandamus proceeding, which is the only remedy in New Jersey of a creditor of a municipality for the enforcement of its contract. Hourigan v. North Bergen Township, 113 N.J.L. 143, 172 A. 193, 785; Borough of Fort Lee v. United States ex rel. Barker, 3 Cir., 104 F. 2d 275. Hence a writ of execution was issued out of the New Jersey Federal Court on the judgment, which was returned unsatisfied, and plaintiff's assignors then applied in that court for a peremptory writ of mandamus requiring the defendant to assess and levy, in addition to the regular city taxes, the amount due upon the judgment with interest to the time of payment. A peremptory writ of mandamus was issued on March 15, 1935, but on appeal the order was reversed. City of Asbury Park v. Christmas, 3 Cir., 78 F.2d 1003. The Circuit Court, however, directed the District Court to retain jurisdiction of the petition.

On December 14, 1936, the Municipal Finance Commission certified to the defend-

ant resolutions which provided for the refunding of the defendant's indebtedness, including the bonds upon which the judgment was based, by the issuance of new bonds under a plan calling for a debt service levy in 1937 and each year thereafter sufficient in amount to make available annually for all creditors the sum of $630,000.

Thereafter, and on December 29, 1936, the New Jersey Federal Court, in the pending mandamus proceeding, granted a peremptory writ of mandamus requiring the defendant to budget annually the sum of $87,381, until the principal amount due on the judgment, as well as interest at 6%, was fully paid and satisfied. This sum apparently represented the precise amount that would have been available annually to the holders of the bonds upon which the judgment was based under the proposed refunding plan of the Municipal Finance Commission. After this writ was granted the Municipal Finance Commission applied to the New Jersey Supreme Court for a peremptory writ of mandamus requiring the defendant to make an additional tax levy for the benefit of all other bond holders, which writ was thereupon issued. The result was to put all bond holders on a parity. Rippel v. City of Asbury Park, 118 N.J.L. 45, 190 A. 489.

On April 29, 1938, the refunding plan was approved and authorized by the New Jersey Supreme Court, and this plan was put into operation on June 15, 1938. The plan provided for the refunding of outstanding bonds, including the bonds upon which the judgment was based. The old bonds were to be exchanged by consenting creditors for new bonds, which would be valid and legally binding obligations of the city, the city was given the power and was legally obligated to levy ad valorem taxes upon all taxable property, and the new bonds were to be dated December 1, 1937, and were to bear interest payable semi-annually at the rate of 4% per annum. Article II of the plan provided that in full satisfaction of all unpaid interest upon the bonds to be funded or refunded, the city would pay in cash a sum equal to 3% per annum for the period from January 1, 1934, to December 1, 1937, less any payments theretofore made on account of interest accruing after January 1, 1934.

In 1937 and 1938, the defendant paid $87,381 on the judgment pursuant to the peremptory writ of mandamus. Thereafter, by stipulation filed in the New Jersey

Federal Court, the annual payments were reduced to $45,718.79, and it was agreed that after adjustments, and as of June 2, 1938, there was due on the judgment $696,582.28 principal, and $52,895.60 interest. On June 5, 1939, a payment of $45,718.79 was made.

On June 4, 1940, an application for a writ of certiorari, for the purpose of preventing the annual payment due on June 5, 1940, was filed in the New Jersey Supreme Court by two bondholders and a taxpayer, claiming that further payments under the writ were barred by the refunding plan. There is nothing in the papers to show what action was taken on this application, but on June 19, 1940, a payment of $45,718.79 was made, and on June 9, 1941, another payment in the same amount was made on the judgment. No payments have been made since that time.

In the meantime, the defendant, pursuant to the refunding plan, had issued and delivered to the Central Hanover Bank & Trust Company refunding bonds of the aggregate amount of $671,000, for the purpose of refunding or funding the indebtedness of the defendant in that amount, representing the unpaid balance of the judgment, and that portion of the judgment which was apparently based upon the following old bonds of the defendant:

1. $483,000 temporary loan bonds, dated September 1, 1933, payable December 1, 1933.

2. $184,000 temporary loan bonds, dated April 1, 1930, payable April 1, 1934.

3. $4,000 temporary loan bonds, dated June 1, 1929, payable December 1, 1933.

On September 19, 1941, the Court of Errors and Appeals of New Jersey upheld the constitutionality of the composition statute under which the refunding plan had been formulated and approved, and sustained the dismissal by the Supreme Court of New Jersey of a suit brought to recover the face value of old bonds and coupons. Faitoute Iron & Steel Co. v. City of Asbury Park, 127 N.J.L. 239, 21 A. 2d 796. This decision was affirmed by the United States Supreme Court on June 1, 1942. 62 S.Ct. 1129, 86 L.Ed. 1629.

In October, 1941, the City Council of the defendant passed an ordinance authorizing the issuance of new bonds for the purpose of paying, funding or refunding the outstanding obligations and indebtedness of defendant, including the bonds is-

sued pursuant to the 1938 refunding plan, the earlier bonds which had not been exchanged, and the judgment claim of the plaintiff. Section 2 of the ordinance declared that refunding bonds aggregating $185,000 had been issued, but that old bonds aggregating that amount had not been surrendered therefor, and Section 3 recited that refunding bonds in the aggregate principal amount of $671,000 had been authorized for the purpose of refunding the old temporary loan bonds of the defendant evidenced by the judgment, that the refunding plan contemplated and provided that the balance due on the judgment should be refunded or funded by the issuance of the new refunding bonds subject to adjustments provided for in the plan on account of interest accruals on the temporary loan bonds and payments theretofore made with regard thereto, and that the refunding bonds had been duly executed and were then held by the Central Hanover Bank & Trust Company at New York ready to be turned over in accordance with the adjustment plan upon the surrender of the temporary loan bonds and the vacating of the judgment, and upon the making of the appropriate adjustment of interest accruals and previous payments.

The ordinance authorized the issuance of negotiable bonds of the aggregate principal amount of $10,230,000 for the purpose of paying, funding, or refunding $67,500 of tax refunding bonds, and $9,718,200 of refunding bonds, including the bonds and indebtedness described in Sections 2 and 3 of the ordinance. By Section 8, the sum of $856,000 was appropriated to the payment at not exceeding par of the $856,000 refunding bonds described in Sections 2 and 3 of the ordinance, then held by the Central Hanover Bank & Trust Company or the Asbury Park & Ocean Grove Bank ready to be turned over in accordance with the adjustment plan; and that section declared that "said monies shall be set aside and segregated from all other monies of said City and held by said City in trust for the purposes for which the same are appropriated". This section further provided that if any of these refunding bonds were not turned over when the proceeds of the new bonds were available, such refunding bonds should be retained in accordance with their terms and be paid with monies appropriated by Section 8, and that "the said monies shall forthwith and as of the date fixed for the redemption of

said refunding bonds be paid to the Central Hanover Bank & Trust Company or the Asbury Park & Ocean Grove Bank, as the case may be, and be substituted for such refunding bonds held ready to be turned over in accordance with said adjustment plan, for all intents and purposes in lieu of the said. refunding bonds previously so held ready to be turned over, and the said refunding bonds previously so held to be turned over shall thereupon be canceled". The section finally provided that the holders of these refunding bonds should have only the rights with respect to such monies which they had with respect to the refunding bonds.

Section 9 of the ordinance provided that the monies "held in trust" by the city in accordance with Section 8, pending substitution thereof for the refunding bonds described in Sections 2 and 3, should "be kept in a separate bank account and shall not be commingled with any other monies" of the city, and that the monies held in such account and thereafter by the Central Hanover Bank & Trust Company or the Asbury Park & Ocean Grove Bank should be used only for the payment of the principal of such refunding bonds, except as thereinafter provided. The section further provided that such monies might "be used for the payment of any obligations which under the provisions of said adjustment plan were to be refunded or funded by the issuance of said refunding bonds, but unless otherwise permitted in accordance with a final judgment, order or decree of a court of competent jurisdiction", which judgment, order or decree was recognized by the Local Government Board of the State of New Jersey as determinative of the point and which court was satisfactory to such Board with respect to finality of resort, such monies might be so used "for the payment of obligations other than refunding bonds only upon the terms prescribed by said adjustment plan as conditions to the issuance of said refunding bonds, including such terms with respect to the adjustment of interest, the surrender of obligations refunded and the furnishing of proof of satisfaction, discharge or vacating of any judgment, decree, order, stay or other process made or entered in any suit, action or proceeding based on or relative to such obligations".

Under the ordinance, the new bonds were made direct and general obligations of the defendant, and the defendant was obligated

to levy ad valorem taxes upon all taxable property for the payment of the bonds and interest thereon without limitation of rate or amount. The new bonds were sold and the proceeds in the amount of $9,846,765.04 were deposited in the Marine Midland Trust Company. The notice of sale and invitation for proposals stated that the indebtedness of the defendant as of September 30, 1941, included $856,000 of bonds authorized under the refunding plan and which were then in the custody of certain banking institutions pending exchange with holders of outstanding bonds or notes of earlier date not yet tendered by such holders for exchange under the plan. It also stated that of this amount $671,000 of bonds were held pending settlement of a judgment final rendered in the United States District Court for the District of New Jersey against the city on February 21, 1935, the principal amount of which was then $696,582.28. The notice, however, also represented that as a result of the new refunding plan the city would provide cash for the $671,000 principal amount of bonds exchangeable under the earlier refunding plan for the bonds or notes upon which the judgment was rendered, and, together with the cash raised by the sale of new bonds, the city would also deposit, "in trust", pending final determination of the amount due, a further sum of money so that the total amount to be held "in trust" would be equal to the full amount claimed by the judgment creditors.

The defendant checked out all of the money deposited in the Marine Midland Trust Company except the sum of $917,065.04, which represented $671,000 deposited "in trust" on the judgment, $185,000 deposited "in trust" for the holders of outstanding bonds or notes which had not been tendered for exchange under the earlier refunding plan, and $36,200, for expenses, and $24,865.04 for accrued interest received from purchasers of the new bonds and repayable to them.

The defendant also deposited a total of $171,024.29 in the Central Hanover Bank & Trust Company and the Asbury Park & Ocean Grove Bank to take care of interest on the judgment and on the bonds and notes not tendered for exchange, in the event of a determination that such interest was due and payable.

On October 27, 1941, the defendant, following the decision of the Court of Errors and Appeals in Faitoute Iron & Steel Co. et al. v. City of Asbury Park, supra, moved in the New Jersey Federal Court for an order perpetually staying the enforcement of the judgment and directing that it be expunged of record. This motion apparently is still pending.

On November 29, 1941, this action was commenced in the New York Supreme Court, New York County, by the filing of the summons and complaint, and by an attachment of $810,000 of the monies in the Marine Midland Trust Company. The action was removed to this court by the defendant on February 21, 1942.

[3] Both sides agree that the merits are not involved on the motion. Indeed, the New York law is clear that on a motion to vacate a warrant of attachment, the court may not consider the merits of the action and determine whether the plaintiff can succeed or not. Auerbach v. Grand National Pictures, 176 Misc. 1031, 29 N.Y.S.2d 747, affirmed 263 App.Div. 712, 31 N.Y.S.2d 670. Hence the narrow question presented is whether the monies in the Marine Midland Trust Company are exempt from attachment, either because they are trust funds or because they are funds of a municipality which cannot be reached by levy.

The question of whether a trust relationship is created, as respects the bank of deposit, depends upon the law of the state of deposit. Reno Nat. Bank of Reno v. Seaborn, 9 Cir., 99 F.2d 482. It is well settled that if a deposit is made as a general deposit, the fact that it is made for the purpose of providing a credit, which is to be used thereafter for a special purpose, does not give it the status of a trust fund in the hands of the bank. In re Kountze Bros., 2 Cir., 103 F.2d 785. In New York, no trust is created for the benefit of coupon holders merely by reason of a deposit for the special purpose of paying interest on bonds. In re Kountze Bros., supra.

The old bonds were charges upon the general credit of the defendant. They were general obligations. As such, it is clear that the city could make a general levy of taxes to pay the judgment, despite the fact that the monies raised by the bonds might not have been used for a strictly governmental purpose. Cf. Pacific Gas & Electric Co. v. Sacramento M. Utility Dist., 9 Cir., 92 F.2d 365; Brush v.

Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428.

The money upon which the levy was made was raised by the defendant in the exercise of a prime governmental power, and it was appropriated and set up "in trust" for the express purpose of satisfying the judgment and the early bonds that were not tendered for exchange, subject to certain stated conditions. The money was appropriated for a specific purpose inconsistent with its use for the discharge of the plaintiff's claim, except upon compliance by the plaintiff and the other bond holders with the conditions of the ordinance authorizing the deposit. Although it is true that there was nothing in the arrangement between the defendant and the bank which made the latter a trustee for the plaintiff so as to give the plaintiff an interest in the fund which could be enforced against the bank, the defendant was a trustee as regards the plaintiff and the others for whose benefit the deposit "in trust" was made. Cf. Federal Deposit Ins. Corp. v. Casady, 10 Cir., 106 F.2d 784. The monies were set aside and segregated from all other monies of the defendant, and were held in trust for the purposes for which the same were appropriated; such monies were kept in a separate bank account and were not commingled with any other monies of the defendant; and strict limitations were placed in the ordinance upon the use and disposal of such monies. Under all the circumstances, it is clear that the money on deposit in the Marine Midland Trust Company was not subject to the levy of attachment. Van Horn v. Kittitas County, 28 Misc. 333, 59 N.Y.S. 883, affirmed 46 App.Div. 623, 61 N.Y.S. 1150. Doyle v. City of Astoria, 147 Misc. 127, 262 N.Y.S. 572, affirmed 238 App.Div. 833, 262 N.Y.S. 973, and Harman v. City of Fort Lauderdale, 134 Misc. 133, 234 N.Y.S. 196, are clearly distinguishable. In the former case, the court held that the affidavits which were submitted fell short of establishing any trust, and the papers affirmatively showed that the funds attached were connected with a municipal enterprise involving operation of and income from its own water works. In the latter, the court pointed out that the activities of the defendant, Broward County Port Authority, were not local in character, and that it was neither governmental nor local in its principal activities. There is no contention here that the monies on deposit were derived from the operation of the pavilion or building for public resort and public exhibitions, lectures and assemblages. Furthermore, the papers here plainly show that the City Council of the defendant intended to create a trust with respect to these monies. Finally, there can be no question but that the activities of the defendant were and are purely local, and are principally governmental in character.

I hold, therefore, that the monies held "in trust" by the Marine Midland Trust Company were not subject to attachment by the plaintiff. It follows that the levy made by the sheriff against these funds must be set aside. With this disposition, the service of the process on the defendant by publication is without any support, and should also be set aside.

The motion of the defendant to set aside the levy of attachment and the service of process by publication on the defendant is in all respects granted.