## CHRISTMAS et al. v. CITY OF ASBURY PARK.

## UNITED STATES ex rel. CHRISTMAS et al. v. CITY OF ASBURY PARK et al.

### No. 4851.

District Court, D. New Jersey.

November 27, 1943.

Arthur T. Vanderbilt, of Newark, N. J., for Edwin T. Murdoch (substituted) plaintiff-relator.

Joseph F. Mattice, of Asbury Park, N. J. (Henry E. Russell, of New York City, of counsel), for City of Asbury Park et al., defendant-respondents.

FORMAN, District Judge.

The original plaintiffs in this cause were Albert G. Christmas, Nolan Harrigan and Edwin H. Barker, who recovered a judgment against the City of Asbury Park on February 21, 1935, in the sum of $1,419,-104.63 damages and $28.71 costs, upon certain bonds and coupons issued by said City and which were then in default. A writ of execution was issued and returned unsatisfied.

In New Jersey the real and personal property of a municipal corporation, held and used by it for corporate purposes, is exempt from levy and sale under execution. The remedy for such a creditor is by way of a writ of mandamus and during the following period proceedings for this relief were sought by the plaintiffs and granted by this court. Upon appeal, however, on July 22, 1935, the United States Circuit Court of Appeals for the Third Circuit reversed the action of this court by vacating the order for the mandamus but at the same time directed that jurisdiction should be retained of the petition for the mandamus filed by the plaintiffs. 78 F.2d 1003.

Meanwhile, on March 7, 1935, an order was entered by the New Jersey Supreme Court placing the City under the control of the Municipal Finance Commission of the State of New Jersey pursuant to a petition filed by bondholders and their representatives resident in New Jersey, in accordance with the provisions of the statutes of New Jersey. N.J.R.S. 52:27-1 et seq., N.J.S.A.

On January 21, 1936, plaintiffs as relators filed a supplemental petition with this court for the purpose of renewing their application for a peremptory writ of mandamus. The Municipal Finance Commission of New Jersey filed a petition for leave to intervene in the proceedings, which was granted. Answers were filed by the City, its officials and the Municipal Finance Commission, which alleged as a defense that a petition had been filed in the New Jersey Supreme Court seeking approval of a plan for the composition of the debts of the City and that the said court had assumed jurisdiction of the proceedings pursuant to the provisions of the New Jersey statutes concerned with the adjustment or composition of claims of creditors of municipalities. N.J.R.S. 52:27-34 et seq., N.J.S.A.

On December 29, 1936, an order was entered in this court directing the issuance of a peremptory writ of mandamus under which the respondents were required to assess and levy a tax for the year 1937 in an amount deemed sufficient to produce in that year the sum of $87,381, and to assess and levy a tax in an amount similarly computed in each succeeding year thereafter "until the principal amount of relators' judgment, plus interest thereon, or on the unsatisfied portion thereof, at the rate of six per centum per annum, is paid and satisfied." A peremptory writ of mandamus issued pursuant to the order on January 4, 1937.

The sum of $87,381 per annum was fixed because it represented the amount the holders of the bonds would have received annually based upon the refunding proposal then before the New Jersey Supreme Court. In fact, after this writ was granted that court was petitioned by other bondholders for a peremptory writ of mandamus requiring the City to make an additional levy for their benefit which was issued and all of the bondholders thus arrived on the same level. Rippel v. City of Asbury Park, 118 N.J.L. 45, 190 A. 489.

The respondents under the writ issuing out of this court did not obey it and an application was made to hold them in contempt but before it came to a hearing the parties entered into a stipulation on June 15, 1937, wherein they agreed that the sum of $87,381 should be paid in three installments during that year and the contempt proceedings were to be dismissed. It was further agreed that the City should

have the opportunity to stamp the bonds and coupons upon which judgment was recovered indicating that those bonds and coupons had been reduced to judgment, and they were so stamped.

An amendment to the proposed plan for refunding had been offered in the proceedings in the New Jersey Supreme Court. On April 29, 1938, an order was entered approving the amended refunding plan. Under it the old bonds were to be exchanged by consenting creditors for new bonds which would be direct unlimited obligations of the City. Power was given to the City and it was legally obligated to levy ad valorem taxes upon all taxable property. The new bonds were to be dated December 1, 1937, and were to bear interest at the rate of 4% per annum, payable semi-annually.

In each of the years 1937 and 1938 the City paid the sum of $87,381 to the plaintiffs-relators, but on June 1, 1938, Central Hanover Bank & Trust Company of New York City, a depositor with the bondholders' committee consisting of the plaintiffs, notified them that it desired to withdraw the bonds deposited by it and participate in the amended refunding plan. At its request plaintiffs-relators released so much of the judgment which represented the proportion of the beneficial interest of the Central Hanover Bank & Trust Company in the said judgment, without prejudice to the balance of the judgment, and the bonds and coupons which it had deposited were delivered to the Bank at its request at the time of its withdrawal.

On June 14, 1938, plaintiffs-relators, City of Asbury Park and the Municipal Finance Commission of New Jersey, entered into a stipulation in which it was agreed that the annual payments under the writ of mandamus should be reduced from $87,381 to $45,718.79, the reduction being proportionate to the amount of the reduction of the judgment by the withdrawal of the Central Hanover Bank & Trust Company. When these bonds were voted by it in favor of the plan, it gave the total support of 85% of the bondholders required under the law for approval. The amended refunding plan went into effect one day after the execution of the stipulation—June 15, 1938.

On December 10, 1938, the Municipal Finance Commission of New Jersey was ordered by the New Jersey Supreme Court to cease functioning in the City and its jurisdiction was terminated.

On June 5, 1939, the City paid the sum of $45,718.79 in accordance with the terms of the stipulation of June 14, 1938.

On April 22, 1938, Nolan Harrigan assigned his interest in the judgment in this cause to Albert G. Christmas and Edwin H. Barker. On April 3, 1940, they assigned the judgment to Wallace D. Bradford and Edwin T. Murdoch and on November 27, 1941, Wallace D. Bradford assigned his interest in the judgment to Edwin T. Murdoch. Appropriate motions have been granted to amend the pleadings to show the assignments made by the original plaintiffs-relators with their interests terminating in Edwin T. Murdoch, and the succeeding officials of the City of Asbury Park as present respondents.

On June 19, 1940, the City paid the 1940 annual installment of $45,718.79, and the 1941 annual installment was paid on June 9, 1941, in the similar sum of $45,718.-79.

Plaintiffs-relators in no way participated in the proceedings in the New Jersey Supreme Court and neither consented to nor accepted the plan as approved therein.

After the payment in 1941, a motion was made on behalf of the defendant City, and respondents, to perpetually stay enforcement of the original judgment, to vacate the order for mandamus and to quash the writ and to expunge both the judgment and the order for mandamus of record upon the delivery of certain refunding bonds by the City and the surrender of old bonds by the plaintiffs-relators or their ultimate assignee.

In October of 1941, the City passed an ordinance authorizing the issuance of new bonds for the purpose of paying, funding or refunding its outstanding obligations including the bonds issued pursuant to the 1938 amended refunding plan, the earlier bonds which had not been exchanged and the judgment claim of the plaintiffs-relators. A sale of the bonds so authorized provided the means whereby the refunding bonds and other obligations of the City were liquidated but again Edwin T. Murdoch, the ultimate plaintiff-relator, stood upon the judgment originally entered as the basis of his claim against the City and not upon the bonds and coupons upon which the judgment was taken.

The practical effect of the motion on behalf of the City is to compel the acceptance by the plaintiff-relator of interest at the rate of 4% per annum as provided for in

the amended refunding plan, as approved by the New Jersey Supreme Court, instead of at the rate of 6% per annum as provided for in the judgment and the order for the mandamus in this court. Since the motion is directed retrospectively to the date that judgment was entered, February 21, 1935, a substantial sum is involved.

There is also pending a motion by the plaintiff-relator to amend the mandamus by accelerating payment under it by reason of the fact that cash was provided for the liquidation of the judgment of plaintiff-relator by reason of the sale of the bonds issued in 1941.

On March 20, 1943, an order was made which provided, among other things, for the delivery to the plaintiff-relator under the terms and conditions set forth therein, the sum of $590,580 without prejudice to the position of the parties with respect to their motions.

Plaintiff-relator resists defendant's-respondents' motion and asserts as his first point that the judgment and order of this court cannot be reopened and modified to reduce the interest on the judgment. In support of this point he argues that his judgment in this court bears interest at such rate as is allowed under the law of the State of New Jersey, 28 U.S.C.A. § 811, which is fixed at the rate of 6%. N.J.R.S. 31:1-1, N.J.S.A. He asserts that it is beyond the power and jurisdiction of a court to reopen or modify its final judgment or order after the expiration of the term at which the judgment or order was entered. He contends that, assuming (but not conceding) a subsequent decision changed the existing law, it would not give rise to any rights in a party to have a prior judgment reversed or modified even though the new rule of law would have required a different result if it had been applied in the earlier case.

For his second point he asserts that even if it is assumed that the judgment may be reopened and modified the defendant and respondents are barred by reason of their acquiescence, waiver and laches. The amended refunding plan received final approval from the New Jersey Supreme Court in April of 1938, but the City continued to make payments of annual installments from the year 1937 to the year 1941, inclusive, thus acquiescing in the validity of the judgment and of the provisions for the payment of interest at the rate of 6% as contained in the order for the mandamus.

It is argued that this treatment was a full recognition of the fact that the judgment and interest were not affected by the amended refunding plan.

He points to the fact that the City entered into a stipulation on June 14, 1938, about a month after final approval of the amended refunding plan by the New Jersey Supreme Court, and contends that the City "agreed that beginning with the year 1939, the City of Asbury Park instead of assessing and levying a tax in the amount of $87,381 annually for the payment and satisfaction of relators' judgment plus interest, should levy taxes in the year 1939 in an amount deemed sufficient to pay the sum of $45,718.79 and in each year thereafter, and that on or before the fifth day of June in each year beginning with 1939 the City of Asbury Park should pay to the United States Marshal for the District of New Jersey the sum of $45,718.79, plus Marshal's fees, until the unsatisfied principal amount of said judgment and any unsatisfied interest due thereon, with interest to become due on said unsatisfied principal amount, or on the unsatisfied portion thereof at the rate of six per centum per annum should be paid and satisfied." He contends that this stipulation also expressly recognized the right of plaintiffs-relators to participate in any distribution of cash made by the City to any of its creditors, to be credited on the judgment.

He cites the facts that bondholders and a taxpayer instituted certiorari proceedings in the New Jersey Supreme Court to contest the legality of the resolution of the City authorizing the payment of the 1940 installment and the City appeared as respondent in that suit and supported its validity; the judgment was not included in the refunding plan in the proceedings in the New Jersey Supreme Court; that under the stipulation of June 9, 1937, the City insisted that the bonds and coupons upon which the judgment was recovered should be cancelled by an appropriate stamp; the lapse of five or six years and the long continued acquiescence in the validity of the judgment and order make the City guilty of laches, and urges that all of these matters constituted further acquiescence in the continuance and validity of the judgment and the provision for interest at 6%.

The plaintiff-relator for his third point submits that the issue raised by the defendants-respondents by their motion is res

adjudicata. He states that the issue has been determined twice—one in this court in the second mandamus proceedings when the defendant-respondents pleaded that a plan had been submitted to the Supreme Court for the composition of the debts of the City and that the plaintiffs-relators were barred from enforcing their rights under their judgment against the defendant-respondents. The court overruled the plea and granted the plaintiffs-relators a peremptory writ of mandamus for the collection of the full amount of the judgment and interest at the rate of 6%. Having full jurisdiction over the parties and the subject matter at that time, by granting the order then the court determined the issue again raised here and defendant-respondents are concluded from relitigating it.

The second time the issue was resolved occurred in June of 1940 when bondholders and a taxpayer applied for certiorari to the New Jersey Supreme Court to determine the legality of a resolution of the City Council which authorized payment of the 1940 installment due on the judgment and interest. The application was denied and the effect of this, the plaintiff-relator urges, was to hold that this judgment was not included in the plan and the plan was not binding upon the plaintiffs-relators.

For his fourth point the plaintiff-relator submits that the amended refunding plan of the City is not binding upon him because his judgment was recovered long before the amended refunding plan was approved; that the City restricted the operation of the plan to a single class of creditors and indebtedness, namely, "bonds and notes" which were "valid and legally binding obligations of the City". The plaintiffs-relators were not holders of bonds and notes of the City nor were they similarly situated with the holders of valid and legally binding bonds and notes of the City. The bonds and coupons upon which the judgment was recovered were merged into the judgment and ceased to exist as valid and legally binding obligations.

Many of the arguments raised to support preceding points are reiterated in connection with this point in addition to which the plaintiff-relator submits that neither he nor his predecessor plaintiffs-relators, as owners of the judgment, were ever residents or citizens of the State of New Jersey, and that the New Jersey composition statute (N.J.R.S. 52:27–34, N.J.S.A.), be-ing a state insolvency or bankruptcy statute, cannot have extra-territorial effect and cannot discharge the City from any of its obligations owed to nonresidents who did not participate in or consent to the plan.

Finally, the plaintiff-relator submits that the New Jersey composition statute is unconstitutional in so far as it attempts to affect the right to enforce this judgment because it restricts the right of the holder of this judgment to compel the City by mandamus to satisfy the principal and interest of said judgment. At the time of the issuance and sale of the bonds upon which the judgment was recovered, the statutes of New Jersey gave to judgment creditors of all municipalities the absolute right to a peremptory writ of mandamus to enforce their judgments and the interest accruing thereunder whenever execution issued on said judgments was returned unsatisfied. N.J.P.L.1878, c. 117; N.J.P.L.1918, c. 236 § 505, N.J.S.A. 2:26–84. The New Jersey composition statute was passed in 1933 long subsequent to the issuance and sale of the bonds and provides that after conditional approval has been given to a plan no action or proceeding of any kind or character may be brought for the enforcement of a claim included in the plan. If, as contended by the City, the judgment had been included in the amended refunding plan, the New Jersey composition statute is void and unconstitutional to the extent that it restricts the right of the holder of this judgment to compel the City by mandamus to satisfy the principal and interest of said judgment.

Plaintiff-relator insists that the decision in the case of Sovereign Camp W. O. W. v. Wilentz, D.C., 23 F.Supp. 23, appeal dismissed 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994, reversed (on other grounds) 108 F.2d 1022, is decisive on the above issue and that Faitoute Iron & Steel Co. v. City of Asbury Park, 316 U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629, in no way affects the decision of the court in the former case. He distinguishes the Faitoute case from this in that it dealt with resident bondholders who had not reduced their bonds to judgment. In this case, plaintiff-relator and his predecessors are non-residents who reduced their holdings to judgment long before any composition plan was submitted to the New Jersey Supreme Court by the City of Asbury Park.

A further point is made by plaintiff-relator in that substantial interests in the

judgment have been sold to various parties and that in this manner rights of innocent purchasers for value have intervened and laches bars the right of the City to move at this late date to assert alleged rights arising from the refunding proceedings.

The defendant-respondents concede that the judgment and the mandamus are without fault and their motion is not predicated upon any attempt to reduce the interest on the judgment. They assert their attack upon the judgment is because the action of the New Jersey Supreme Court placing in operation the amended refunding plan constituted a subsequent order of a court of competent jurisdiction which rendered the judgment and the mandamus null and void. Under that order the judgment was discharged and the plaintiffs-relators were entitled to new bonds bearing interest at the rate of 4%. They contend that the rules with respect to the time within which action must be taken to attack a judgment as erroneous have no application in this instance because their motion is as if it were based upon a discharge by a federal bankruptcy court.

In connection with the second point of the plaintiff-relator they submit that the stipulation of June 9, 1937, provided not for the cancellation of the bonds but that the bonds and coupons should be stamped to the effect that they had been reduced to judgment and they insist that the stamp borne by them indicates that only. This stipulation was executed more than a year prior to final approval of the composition decree and the City asserts that its execution did not prevent it from discharging the judgment if it were able to obtain the requisite 85% assents to the plan and the approval of the court.

The defendant-respondents submit they entered into the stipulation of June 14, 1938, when the Central Hanover Bank & Trust Company withdrew its bonds from plaintiffs' committee and deposited them under the plan of composition, to protect the officials of the City from being adjudged in contempt of court because the amounts of the installments under the writ of mandamus were to be reduced proportionately in accordance with the amounts of the bonds which had been withdrawn, but the stipulation did not constitute an agreement to pay annual installments in a reduced amount.

The application for a writ of certiorari to the New Jersey Supreme Court to review the legality of the City's resolution authorizing payment of the 1940 installment under the writ of mandamus was refused by that court without written order and no papers were filed. Opposition by the City to this application, it is submitted, is no more significant than the making of the payments themselves, and it is contended that the making of the payments could not revive the obligation of the judgment.

They further submit that their motion was made promptly upon the decision of the court of last resort in New Jersey in the case of Faitoute Iron & Steel Co. v. City of Asbury Park, 127 N.J.L. 239, 21 A.2d 796, which they count as dispositive of the issue raised by the motion and anticipatory of the affirmance by the United States Supreme Court in that case. Hence they say that they have been guilty of no laches but have acted with promptness and dispatch.

The defendant-respondents resist the third point concerned with res adjudicata on the ground that the answer to the second mandamus proceedings was filed two years before the entry of the decree in the composition proceedings and that the present issue could not have been submitted to the court at that time. The second instance of res adjudicata raised by the plaintiff-relator concerned itself with the application for the writ of certiorari to test the validity of a resolution of the City authorizing the payment of the 1940 installment but the defendant-respondents claim that this application resulted in no determination and again did not encompass the issue here.

In connection with the fourth point of the plaintiff-relator, the defendant-respondents insist that the amended refunding plan did include and contemplate judgment creditors and this particular judgment.

The defendant-respondents charge the plaintiffs-relators with constructive and actual notice of the composition proceedings. Under the direction of the New Jersey Supreme Court such notice was advertised and mailed to all creditors of the City. That such a proceeding was pending, they further charge, was brought to the attention of the plaintiffs-relators during the hearing on the second mandamus application.

The defendant-respondents argue that the provisions of the New Jersey composi-

tion statute bound the plaintiffs-relators whether or not they appeared in the proceedings; that the statute is violative of no rights of the plaintiff-relator or his predecessors, and that the judgment which is the subject of the motion was discharged by virtue of the decree of the New Jersey Supreme Court.

The defendant-respondents deny that they were guilty of laches whereby purchasers of interests in the judgment from the plaintiff-relator were prejudiced. They insist that such purchasers cannot claim to be innocent holders for value as if they were holders of negotiable instruments but must stand in the shoes of the plaintiff-relator and his predecessors.

The foregoing constitute in the main the contentions of the parties.

The plaintiff-relator and his predecessors have assiduously refrained from subjecting themselves by any voluntary act of theirs to the jurisdiction of the New Jersey Supreme Court and have always stood upon their status as non-resident judgment holders in the United States District Court.

In the early part of the year 1941, Faitoute Iron & Steel Co. and Moses W. Faitoute sued the City of Asbury Park in the New Jersey Supreme Court upon bonds issued by it in 1929 and 1930, which they held and which were listed in the proceedings in which the amended refunding plan was approved. The suit was dismissed on March 27, 1941, 19 N.J.Misc. 322, 19 A.2d 445, and the dismissal was affirmed by the New Jersey Court of Errors and Appeals on September 19, 1941, 127 N.J.L. 239, 21 A.2d 796. An appeal to the United States Supreme Court resulted, on June 1, 1942, in an affirmance of the decision of the New Jersey Court of Errors and Appeals, 316 U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629. At the time this decision was rendered the only other substantial outstanding interest not conforming to the provisions of the amended refunding plan was that of the plaintiff-relator.

The New Jersey legislation, N.J.R.S. 52:27-34 et seq., N.J.S.A., pursuant to which the City of Asbury Park was empowered to adjust and compose its obligations, was unqualifiedly approved in this case. The court found that the statute neither constituted municipal bankruptcy legislation in the field of lawmaking preempted by Congress, nor did it impair the contractual obligations of the bonds and coupons by the denial of the right of the holders thereof to recover thereon by their transmutation without their consent into the securities authorized by the amended refunding plan at the lower rate of interest named therein. In that case the court concluded as follows:

"The Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' Davis v. Mills, 194 U.S. 451, 457, 24 S.Ct. 692, 695, 48 L.Ed. 1067. Particularly in a case like this are we in the realm of actualities and not of abstractions and paper rights, of what things are worth in dollars and cents, and in what is proposed to realize paper values. 'The question whether the remedy on this contract was impaired materially is affected not only by the precarious character of the plaintiff's right, but by considerations of fact,—of what the remedy amounted to in practice.' Pittsburgh Steel Co. v. Baltimore Equitable Soc., 226 U.S. 455, 459, 33 S.Ct. 167, 168, 57 L.Ed. 297. This was said of the claim of a creditor of a private corporation. How much more pertinent is it to claims of these appellants against the municipality of Asbury Park in the circumstances before us. To say that the right of the Asbury Park bondholders in 1935 was of precarious character is pure understatement. And we have already seen how empty was the remedy with which to enforce that right.

" 'In the books there is much talk about distinctions between changes of the substance of the contract and changes of the remedy. * * * The dividing line is at times obscure.' Worthen Co. v. Kavanaugh, 295 U.S. 56, 60, 55 S.Ct. 555, 556, 79 L.Ed. 1298, 97 A.L.R. 905. The dividing line will remain obscure if we deal with empty abstract rights instead of worldly gains and losses, if we indulge in doctrinaire talk about 'rights' and 'remedies', instead of giving these concepts a content that carries meaning to the understanding of men. Here we have no such action as that disclosed in Worthen Co. v. Kavanaugh, supra, where with 'studied indifference to the interests of the mortgagee or to his appropriate protection', legislation was found to 'have taken from the mortgage the quality of an acceptable investment for a rational investor,' and the challenged changes of remedy were found to be 'an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security'. Here we have just the op-

posite—no security whatever except the effective taxing power of the municipality; the effective taxing power of the municipality prostrate without state intervention to revive the famished finances of the city; state intervention carefully devised, worked out with scrupulous detail and with due regard to the interests of all the creditors, and scrutinized to that end by the state judiciary with the result that that which was a most depreciated claim of little value has, by the very scheme complained of, been saved and transmuted into substantial value. To call a law so beneficent in its consequences on behalf of the creditor who, having had so much restored to him, now insists on standing on the paper rights that were merely paper before this resuscitating scheme, an impairment of the obligation of contract is indeed to make of the Constitution a code of lifeless forms instead of an enduring framework of government for a dynamic society." 316 U.S. at page 514, 62 S.Ct. at page 1135, 86 L.Ed. 1629, et seq.

■ In the light of realism of the above language and the right of the state, firmly established thereby, to construct the mechanism which resulted in the adoption and consummation of the amended refunding plan, it would seem that the mere formalizing of a claim based upon bonds and coupons into a judgment cannot prevent it from being engulfed by the processes of the state court wherein the plan was brought into being, unless cogent reasons are advanced.

■ Plaintiff-relator urges that the motion cannot be granted because of the limitation upon the power and jurisdiction of a court to reopen or amend its orders and decrees at a time subsequent to the term in which they were entered and further that if the effect of a subsequent decision is to change the applicable law a party does not thereby acquire rights to have reversed or modified a prior judgment or order even though the new rule of law would have required a different result if it had been applied in the earlier case. The suggestions are not applicable here.

■ The judgment and the order for the writ of peremptory mandamus were proper and, as defendant-respondents observed, "without fault or blemish." However, they were rendered impotent to avail the plaintiff-relator any greater recovery upon the City's obligations than holders of such obligations who had not reduced them to judgment in the face of the order of the New Jersey Supreme Court approving and placing in operation the amended refunding plan.

■ The distinction that he and his predecessors in the suit were non-residents of New Jersey and thus could not be affected by the proceedings in the New Jersey Supreme Court are said by the plaintiff-relator to be supported by decisions that rest on the case of Ogden v. Saunders, 25 U.S. 213, 12 Wheat. 213, 6 L.Ed. 606, wherein it was held that when states in the exercise of their power to pass their own bankruptcy laws, act upon the rights of citizens of other states, "there arises a conflict of sovereign power, and a collision of judicial powers granted to the United States, which render the exercise of such a power incompatible with the rights of other states, and with the constitution of the United States."

In the Faitoute case, supra, the citation of another early case brought the following comment from the Court:

"From time to time, ever since Sturges v. Crowninshield, 4 Wheat. 122, 199, 4 L. Ed. 529, it has been stated that a state insolvency act is limited by the Contract Clause of the Constitution in authorizing composition of pre-existing debts. So it is, but it all depends on what is affected by such a composition and what state power it brings into play. The dictum from Sturges v. Crowninshield is one of those inaccurate generalizations that has gained momentum from uncritical repetition.

"If a State retains police power with respect to building and loan associations, Veix v. Sixth Ward Ass'n, 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061, because of their relation to the financial wellbeing of the state, and if it may authorize the reorganization of an insolvent bank upon the approval of a state superintendent of banks and a court, but over the dissent of one-fourth of the depositors (except preferred or secured claimants), Doty v. Love, 295 U.S. 64, 55 S.Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438, a state should certainly not be denied a like power for the maintenance of its political subdivisions and for the protection not only of their credit but of all the creditors by an adjustment assented to by at least 85 per cent of the creditors, approved by the commission of the state having oversight of its municipalities, and found wise and just after due hearing by

a court." 316 U.S. at pages 513, 514, 62 S. Ct. at page 1135, 86 L.Ed. 1629.

It is clear that the principle enunciated in Ogden v. Saunders is confronted with the same state power said to have been brought into play in impact with Sturges v. Crowninshield. If a contrary view is taken, then the entire justification of the New Jersey composition statute would fall in so far as it could operate on non-resident bondholders, and in view of the diversity of citizenship of the innumerable owners of such securities the approved state scheme would deteriorate into a futility. The plaintiff-relator cannot acquire the advantage he seeks by reason of his non-resident status.

The plaintiff-relator contends that if his judgment was included in the amended refunding plan, the New Jersey composition statute is unconstitutional and void to the extent that it restricts the right of the holder of the judgment to compel the City by mandamus to satisfy the principal and interest of his judgment, under the case of Sovereign Camp W. O. W. v. Wilentz, D.C.N.J.1938, 23 F.Supp. 23. In that case a "three judge" court held unconstitutional certain "stay" provisions of the Municipal Finance Commission Acts of New Jersey, N.J.P.L.1933, c. 330, N.J.S.A. 52:27–1 et seq., N.J.P.L.1935, c. 195 and c. 258, N.J.S.A. 52:27–46 et seq., in so far as they affected the right of the complainant in that case to enforce its judgment obtained in this court and held that such enforcement should be in accordance with the law existing in the state of New Jersey at the time of the issuance and sale of the bonds in question. The provisions of the New Jersey composition statute, N.J.P.L. 1933, c. 331, N.J.R.S. 52:27–34 et seq., N.J. S.A., were not considered in the case. An appeal to the United States Supreme Court, reported in 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994, was dismissed only after the court pointed out that the issue was not one for which a court of three judges is prescribed, and an appeal to the Circuit Court of Appeals of the Third Circuit, reported in 108 F.2d 1022, resulted in a reversal upon a stipulation in which the appellee confessed error in that the District Court was without jurisdiction, as determined by the United States Supreme Court, because it was improperly composed of three judges. I cannot agree that the decision of the District Court in that case is decisive of any rights of the plaintiff-relator herein, particularly in the light of the later Faitoute case.

Upon analysis the several objections made by plaintiff-relator to the granting of the motion of the defendant-respondents on the ground of waiver, acquiescence, laches and res adjudicata are devoid of merit. He insists that in the amended refunding plan there is no reference to provision for the inclusion of the judgment or the bonds and coupons upon which it is based. An examination of the printed amended refunding plan discloses that definite reference to the inclusion of the judgment in the plan and to the bonds represented by it is found in the form of resolution attached to the plan itself and marked Schedule A. The conduct of the City in appearing and resisting an application of bondholders and a taxpayer who sought to review by certiorari in the New Jersey Supreme Court a resolution of the Council of the City to pay the installment for the year 1940 is suggested as evidence of acquiescence. It is to be remembered that the writ of mandamus was in effect and the City at that time was unarmed with the decision in the Faitoute case. The application was refused but the appearance of the City in the matter had no more effect than the passage of the resolution or the payments of the installments themselves. Similarly, the stipulations of June 9, 1937 and June 14, 1938, are urged as evidence of the acquiescence of the City in the operation of the judgment upon it. The earlier stipulation was made at a time when the composition proceedings had not reached a stage of completion and amounted to an agreement to terms which would otherwise have been inevitably decreed by the court, and the latter stipulation was one in which the plaintiff-relator or his predecessors agreed that no contempt proceedings would be brought against the defendant-respondents if they made payments in a lesser sum than that directed by the mandamus by reason of the release of such portion of the judgment as represented the bonds and coupons deposited by the Central Hanover Bank & Trust Company. It is a fact that the City insisted, pursuant to the earlier stipulation, that each bond and coupon should be so stamped that its reduction to judgment should be indicated thereon. However, neither the stipulations nor the endorsement stamped on the bonds and

coupons sustains the inference of waiver or acquiescence in the plaintiffs'-relators' rights under the judgment in the light of the efforts of the defendant-respondents to resist them, which were equally as rigid as the plaintiffs'-relators' determination to remain outside of any involvement in the composition proceedings.

■ The charge by the plaintiff-relator that the order of this court for the writ of madamus on the second application for such a writ constituted res adjudicata is not sustained because at the time of the order the proceedings had only been initiated and the plan was not approved until a year later. The presence and resistance of the City's representatives to the abortive application for the writ of certiorari to the New Jersey Supreme Court by the bondholders and taxpayer to review the resolution of the City Council in authorizing the payment of the 1940 installment was likewise offered as res adjudicata. It cannot be said to rise to such significance. The application was denied by the court and no papers were filed.

■ It was shown that recently certain interests in the judgment were sold by the plaintiff-relator or his predecessors and that if this motion is granted such purchasers stand to suffer thereby. It would seem that they can acquire no greater equities than the original holders of the judgment enjoyed and are subject to the same vicissitudes.

It is noted that the Supreme Court observed in the Faitoute case: "We do not go beyond the case before us. Different considerations may come into play in different situations." 316 U.S. at page 516, 62 S.Ct. at page 1136, 86 L.Ed. 1629.

■ I am unable to find that the deep and underlying considerations in this case are different. The owners of bonds in this case took a further step in connection with them. Being non-residents of New Jersey they reduced them to judgment in the United States District Court. The judgment did not attach itself to anything as a lien. The basic pattern is still that ruled upon in the Faitoute case. No priority is established for it in impact with a valid composition proceeding under the New Jersey statute. The holder of such a judgment must find his place on the same level of distribution as all of the other holders of the municipality's obligations contemplated in the plan even though, as here, a writ of mandamus had issued. I am constrained to the conclusion that the defendant-respondents neither waived any rights to enforce the acceptance of the plan approved by the New Jersey Supreme Court upon the plaintiffs-relators nor did they acquiesce in the liquidation of the judgment outside of the plan at a rate of return in excess of other bondholders contemplated in the plan. The defendant-respondents acted to enforce the provisions of the plan upon the plaintiff-relator or his predecessors with reasonable dispatch after its legality was established and were guilty of no laches.

Therefore, the motion of the defendant-respondents that the enforcement of the judgment and writ of mandamus based thereon should be perpetually stayed must be granted. Notice should be given by the defendant-respondents that an order will be settled on a forthcoming motion day in conformity with this opinion and the circumstances as they may have been affected by the consent order filed herein on March 20, 1943.